LEOPOLD ET AL., appellants, *v.* SILVERMAN ET AL., respondents.

CHATTEL MORTGAGES. — *When a chattel mortgage is fraudulent on its face.* — A chattel mortgage on a stock of merchandise, the mortgaged property being left in the possession of the mortgagors, contained the following provision: "Said first parties (the mortgagors) may sell said goods, wares, and merchandise in the usual course of trade." *Held*, that the mortgage is void on its face, under section 1538, division 5, Compiled Statutes of Montana, relating to chattel mortgages, and the statute of frauds, sec. 226, div. 5, Comp. Stats. Mont.

ID. — *When a chattel mortgage is fraudulent in effect.* — A chattel mortgage on a stock of merchandise contained the following provision: "It is provided, however, that the said parties (the mortgagors) may continue to sell the said stock of merchandise in the usual course of trade, accounting, however, as often as requested, and at least once a month, to the second party (mortgagee) for the proceeds of all such sales." The mortgagee, at the time of the execution of the mortgage, after pretending to take possession of the mortgaged property, left it in the possession of an agent and the mortgagors, to be sold by them. The mortgagors received a portion of the proceeds of the sales with the consent of the mortgagee. *Held*, that such a mortgage, even if it is not to be pronounced fraudulent upon its face, should be declared void under the statute of frauds (sec. 226, div. 5, Comp. Stats. Mont.), as soon as extrinsic evidence shows the facts to be as aforesaid.

ID. — *An affidavit to a chattel mortgage made by an agent must recite that the principal is absent.* — An affidavit to a chattel mortgage was made by an agent of the mortgagee, but contained no recital that the mortgagee in whose behalf the agent acted was absent from the territory: *held*, that the absence of a party to a chattel mortgage must be clearly set forth in the affidavit itself, before an agent can make the oath required by section 1538, division 5, Compiled Statutes of Montana.

ID. — *A chattel mortgage is void as to third persons, unless the affidavit required by the statute is made by or in behalf of all persons interested therein.* — In the case at bar, a chattel mortgage was given to secure a note which, as was shown by the pleadings and affidavits on file, included an indebtedness to a certain firm. There was nothing in the mortgage to show said firm's interest, and neither said firm nor any one in their behalf made any affidavit thereto. *Held*, that the mortgage was void as to third persons.

ID. — *No affidavit is necessary to a chattel mortgage when the mortgaged prop-erty is in possession of the mortgagee.* — In a chattel mortgage in the case at bar, the affidavit to which was defective, the pleadings raised an issue as to whether the mortgagors or mortgagees were in possession of the property mortgaged: *held,* that if the property were in possession of the mortgagees, no affidavit would be necessary to the mortgage.

CIVIL PRACTICE. — *Judgment should not be rendered on the pleadings when they raise an issue.* — The issue aforesaid having been raised by the pleading·, *held,* that the court should not have rendered a judgment declaring the mortgage invalid by reason of its defective affidavit, before the question of possession, in dispute, had been settled by evidence.

PLEADING. — *A court is not restricted by the prayer of a complaint.* — *Held,* that a court is not confined to the prayer of a complaint in ascertaining the proper relief to be granted, but that it may look to the whole complaint for that purpose.  *Gillett* v. *Clark,* 6 Mont. 192, cited..

ID. — *A state of facts authorizing a person interested to invoke the chancery jurisdiction of the district court.* — In the case at bar, the mortgagee, in a chat-tel mortgage subsequent to two others, filed a bill in equity to set aside the two prior mortgages on the ground of fraud, and to have a receiver ap-pointed to take charge of the property (a stock of merchandise) embraced in said mortgages.  The court granted a nonsuit, on the ground that it ap-peared on the face of the prior mortgages that they were void, and that plaintiffs had an adequate remedy at law.  Several material issues of fact were raised by the pleadings, which could only have been settled by the taking of evidence.  *Held,* that it was error to grant the nonsuit; also that sufficient facts were pleaded to authorize the exercise of the court's chancery jurisdiction.

LAW AND EQUITY. — *Distinction between, in Montana, commented upon by the court.* — In the case at bar, the court used the following language: "Under our statutes . . . . it would clearly appear, in a case like the present, where plaintiffs have brought a civil action for the enforcement and protection of their rights, or the redress and prevention of their wrongs, that it is the duty of the court to grant such relief as the complaint and the proof made there-under show them entitled to receive, without any distinction between law and equity."

### *Appeal from District Court, Custer County.*

STREVELL & GARLOCK, for the appellants.

A consideration of the case of *Robinson* v. *Elliott*, 22 Wall. 513, ought to be decisive of the invalidity of this mortgage.  In that case the provisions of the mortgage which were adjudged to render it void were far more favorable to its validity than the provision in this mort-

gage. In that, it was provided the avails of sales should be reinvested in other goods which should be answerable for the debt. In this, the mortgagors may sell the goods *ad libitum*, and do with the proceeds whatever they choose to do with them. To the proposition that such a provision renders the mortgage void as to creditors, we beg to refer the court to the following cases: *Robinson* v. *Elliott, supra; Greenebaum* v. *Wheeler*, 90 Ill. 296; *Dunning.* v. *Mead*, 90 Ill. 376; *Russell* v. *Winne*, 37 N. Y. 591; *Byrd* v. *Forbes*, 13 Pac. Rep. 715; *Wilcox* v. *Jackson*, 4 Pac. Rep. 966. In the case of *Langert* v. *Brown*, 13 Pac. Rep. 704, the same court decides that where a mortgage contains a provision allowing the mortgagor to sell " for the sole purpose of applying the proceeds to the payment of the mortgage debt," the mortgage may be upheld. See also *Howard* v. *Wulfekuhler*, 13 Pac. Rep. 566.

TENNEY, BASHFORD, & TENNEY, and STREVELL & GARLOCK, filed a supplemental brief for the appellants.

It is well settled that a chattel mortgage on a stock of merchandise, which authorizes the mortgagor to retain possession and sell in the usual course of trade, is upon its face fraudulent in law and void as to creditors. The decisions of the following states maintain this: Virginia, New York, Ohio, Minnesota, Wisconsin, Illinois, Missouri, Tennessee, Mississippi, Colorado, Oregon, West Virginia, Indiana, Pennsylvania, Connecticut, New Hampshire, Arkansas, Nebraska, also the territory of Dakota. See Pierce on Mortgages of Merchandise; Herman on Chattel Mortgages, 234; Jones on Chattel Mortgages, secs. 379–425. This procedure is expressly authorized by 'section 907, Revised Statutes of 1879, and by section 9, act of 1881, concerning chattel mortgages. This last section does not require the joinder of the two suits to foreclose and to recover possession; either may be prosecuted separately; they are concurrent remedies.

Sec. 165, Rev. Stats., p. 435; sec. 172, p. 436; sec. 1 of the Chattel Mortgage Act of 1881, p. 3. The provision in the statutes of most of the states declares such a mortgage void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith. Under such a statute, it has been held that only a judgment creditor has a standing in a court of equity, though the decisions on that point are not uniform. This court has stated the general rule on this subject, and noted one exception in *Twell* v. *Twell,* 6 Mont. 19. The best exposition of this doctrine will be found in *Case* v. *Beaureguard,* 101 U. S. 588: "Whenever a creditor has a trust in his favor, or a lien upon the property for the debt due him, he may go into equity without exhausting legal processes or remedies." The right to foreclose by suit is expressly given by the statutes already cited, but this remedy existed independent of any statute, and might be pursued at the same time with other proceedings to enforce payment of the debt, or to recover possession of the property. Jones on Chattel Mortgages, sec. 758; Herman on Chattel Mortgages, sec. 206. A bill in equity is the proper mode of foreclosing a chattel mortgage, and courts of equity have general jurisdiction in such suits, notwithstanding a power of sale is expressly conferred on the mortgagee by the mortgage. Jones on Chattel Mortgages, secs. 776, 777, 778. If there are successive liens or encumbrances, it is proper that the mortgage should be foreclosed in a court of equity, where the accounts of all the parties in interest can be readily adjusted and the trust fund equitably distributed among all the claimants. Id., sec. 779; Herman on Chattel Mortgages, sec. 212. All persons interested in the property should be made parties to the bill. Id. See *Hammers* v. *Dole,* 61 Ill. 307, cited approvingly by Jones on Chattel Mortgages, sec. 779. This decision is entitled to greater weight as authority

as coming from a court which maintains with the greatest strictness the distinction between the jurisdiction of courts of law and courts of equity, and insists rigorously upon the rule, in all ordinary cases, that a creditor has no standing in a court of equity until he has exhausted all his legal remedies. *Dormueil* v. *Ward*, 108 Ill. 216. If plaintiffs had an adequate remedy at law, the objection was waived by the pleading to the merits. *Seminary* v. *Gage*, 103 Ill. 175, 182, and the cases cited.

ANDREW F. BURLEIGH, on behalf of respondents Abe and Jacob Block.

A chattel mortgage on a stock of merchandise, containing a provision allowing the mortgagee to sell in the usual course of trade, is not in itself fraudulent, unless it shall clearly appear either from the terms of the mortgage itself, or from an agreement outside the instrument, that at the time of its execution it was intended by the parties that the mortgagor should sell and carry on the business for his own benefit. If such an agreement appears upon the face of an instrument, it is fraudulent in law; if from an outside agreement, it is fraudulent in fact. In neither respect does any such understanding appear respecting the Block mortgage. *Robinson* v. *Elliott*, 22 Wall. 520; *People's Savings Bank* v. *Bates*, 120 U. S. 556; *Marsh* v. *Bird*, 22 Fed. Rep. 576–8; *Clark* v. *Hymen*, 7 N. W. Rep. 389; Jones on Chattel Mortgages, c. 9, secs. 381, 419, 424, 425; *Oliver* v. *Eaton*, 7 Mich. 108–112; *Gay* v. *Bidwell*, 7 Mich. 519, 528; *Wingler* v. *Sibley*, 35 Mich. 231; *Morse* v. *Riblet*, 22 Fed. Rep. 501; *Hill* v. *Stockwell & Darragh Furn. Co.*, 23 Fed. Rep. 432.

Appellants, as creditors at large, not having come into privity with the specific property, either by attachment or a judgment and execution, were not in a position to attack the Block mortgage. They not only were not judgment or attaching creditors, but their indebtedness

at the commencement of this action was not due. Jones on Chattel Mortgages, sec. 245; *People's Savings Bank* v. *Bates,* 120 U. S. 556; *Thompson* v. *Van Vechten,* 27 N. Y. 568–592; *Twell* v. *Twell,* 6 Mont. 19. It is not essential to the validity of a mortgage that it be wholly for the benefit of the mortgagees. Jones on Chattel Mortgages, sec. 355; *Morse* v. *Powers,* 17 N. H. 286. A chattel mortgage given for an amount larger than the debt due is not rendered void by that fact alone. *Smith* v. *Auerbach,* 2 Mont. 349; Jones on Chattel Mortgages, sec. 92. The mortgages set out in the proceedings herein were all made pursuant to a statute of Montana. An Act concerning Chattel Mortgages, Laws of 1881, p. 3. A statutory remedy is there given for their foreclosure, either by an action to foreclose, and which may be joined in an action for the recovery of the possession of the property mortgaged, or by executing a power of sale provided in the mortgage. Laws of 1881, sec. 9, p. 5. A bill in equity is the proper and ordinary mode of foreclosing a chattel mortgage, except in case some other mode is provided by statute. Jones on Chattel Mortgage, sec. 776. The rule in New York is not as broad as stated by appellants. 91 N. Y. 214; *Mack* v. *Phelan,* 92 N. Y. 20. Under our statute, the question of the intent with which a mortgage or other charge is made upon property is a question of fact, and not of law. Jones on Chattel Mortgage, sec. 384 a. And it is so in Montana. Rev. Stats. Mont., sec. 174, p. 437; *People's Savings Bank* v. *Bates,* 120 U. S. 561. The purpose of requiring an affidavit of the parties or their agents to a chattel mortgage is to guard against the making of fraudulent or fictitious mortgages which would enable the mortgagor to retain possession of the property and set his creditors at defiance. Jones on Chattel Mortgages, sec. 58; *Gooding* v. *Riley,* 50 N. H. 400; *Clark* v. *Tarbell,* 57 N. H. 328. A mortgage of chattels without the affidavit required by

statute is valid against a subsequent purchaser with notice that the mortgage was made in good faith and for a full consideration. Jones on Chattel Mortgages, sec. 38; *Roberts* v. *Crawford*, 58 N. H. 499; *Sanborn* v. *Robinson*, 54 N. H. 239.

McLeary, J.   This is an appeal from a judgment on the pleadings rendered by the district court in favor of the defendants, Silverman *et al.*

The facts appear from the records substantially as follows: On the twelfth day of November, 1886, Isaac Silverman and Fanny Silverman were merchants, doing business at Miles City, Custer County, Montana; and on that day they mortgaged their stock in trade to the Stock Growers' National Bank, of Miles City, to secure their note for three thousand five hundred dollars. The bank at once placed an agent in possession of the mortgaged property. That mortgage contained the following provision: " It is provided, however, that the said parties may continue to sell the said stock of merchandise in the usual course of trade, accounting, however, as often as requested, and at least once a month, to the second party for the proceeds of all such sales." On the twenty-second day of November, 1886, and while the agent of the bank was in possession, and the goods were being sold in the usual course of trade, the said Isaac Silverman and Fanny Silverman executed and delivered to A. Block & Co., of Cincinnati, Ohio, a second mortgage, to secure a promissory note for $3,049.92, upon the same property; and the agent of the bank, one Hedderick, was requested to act also as the agent of Block & Co. That mortgage contained the following provision: " Said first parties may sell said goods, wares, and merchandise in the usual course of trade. This mortgage is intended to be second to that now held by the Stock Growers' National Bank, of Miles City, Montana." On the eleventh day of December, 1886, the said Isaac Sil-

verman and Fanny Silverman executed and delivered to the appellants, Leopold Brothers & Co., a third mortgage on the same property to secure their promissory note for $3,022.50, which was to fall due on the first day of May, 1887. The agent, Hedderick, who was already in possession under the first and second mortgages, was requested to act also as the agent of Leopold Brothers & Co., and consented to do so as far as he could without prejudice to the bank and to A. Block & Co. On the twenty-first day of December, 1886, the respondents, A. Block & Co., for two thousand seven hundred dollars cash paid, purchased from the bank the first mortgage, and continued the agent in possession until the twenty-fourth or twenty-fifth day of December, when, it seems, A. Block & Co. put one Newman Borchardt in possession as their agent, and Leopold Brothers & Co. put one T. J. Thompson in possession as their agent. All the while Isaac Silverman was in possession also, and acting as salesman, receiving fifteen dollars a week and his house-rent from the proceeds of the sales. And it is alleged in the replication that the bank, after pretending to take possession of the stock of goods under the mortgage, left Silverman in charge of them to sell them with Hedderick; and that Silverman received a portion of the proceeds of the sales with the consent of both the first and second mortgagees. It appears that the stock of goods was estimated to be worth from four thousand to nine thousand dollars. On the twenty-fifth day of January, 1887, this suit was begun; and on the twenty-seventh day of January, 1887, on the complaint of Leopold Brothers & Co., T. J. Thompson was appointed receiver, and soon after his appointment took possession under the receivership, and remained in possession until he was removed by order of the court. On the twenty-first day of February the order appointing the receiver was, on motion of A. Block & Co., set

aside and vacated by the judge at chambers, and exception duly taken thereto. On the nineteenth day of April, 1887, during the session of the court, the defendants moved the court for a judgment on the pleadings, on the grounds "that it appears from the pleadings herein, on the part of the plaintiffs, that they had, at the commencement of this suit, and still have, a plain, speedy, and adequate remedy at law." On this motion judgment was rendered by the court, upon a full hearing, in favor of the defendants, on the twentieth day of April, 1887. From this judgment the plaintiffs appealed, and the case appears here on the judgment roll. It is contended by the appellants that the first and second mortgages are each void for fraud apparent upon the face thereof. This, being the principal question involved in the case, will be the first considered.

1. At common law, delivery of the chattels mortgaged was necessary to the validity of the mortgage; but, from time to time, statutes have been enacted giving the mortgagor the right to retain possession on complying with certain requisites laid down in the laws in regard to affidavits of good faith, acknowledgments, registration, and the like. We have an act of this kind in Montana, which reads thus: "No mortgage of goods, chattels, or personal property shall be valid as against the rights and interests of any other person than the parties thereto, unless the possession of such goods, chattels, or personal property be delivered to and retained by the mortgagee, or the mortgage provide that the property may remain in the possession of the mortgagor, and be accompanied by an affidavit of all the parties thereto, or in case any party is absent, an affidavit of those present and of the agent or attorney of such absent party, that the same is made in good faith to secure the amount named therein, and without any design to hinder or delay the creditors of the mortgagor,

and be acknowledged and filed as hereinafter provided."
Comp. Stats. Mont., p. 1068, sec. 1538. But statutes such
as this were not intended to validate any mortgage
which was inherently defective. The object to be ac-
complished by such legislation is only to legalize the
possession of the mortgagor on compliance with the
statutes, and not to cure inherent defects in the mort-
gage itself. *Wilson* v. *Voight*, 9 Col. 614; 13 Pac. Rep.
726; *Robinson* v. *Elliott*, 22 Wall. 520. The question
whether or not provisions like those contained in the
first and second mortgages given by Silverman render
the mortgage void, and the further question whether or
not this is a matter to be decided by the court or to be
submitted, under proper instructions, to the jury, have
been often and thoroughly discussed at bar, and re-
ceived the earnest consideration of a great many courts
of last resort, both in England and America. It is use-
less for this court to review that discussion, and to trace
the current of authority from *Twyne's Case*, 3 Coke, 80,
decided in England in 1602, down to the case of *Wilson*
v. *Voight*, decided by the supreme court of Colorado in
March of last year.

The case of *Robinson* v. *Elliott*, decided by the supreme
court of the United States in 1874, reported in 22 Wall.
520, must govern us in the disposition of this case. It
was held in that case, in effect, that any chattel mortgage
upon a stock of merchandise in trade which permits, by
its terms, the mortgagor to remain in possession of the
goods, and to sell the same in the usual course of trade, at
his discretion, and to appropriate the proceeds, or a part
thereof, to his own use, until the maturity of the debt
purporting to be secured by it, or for an indefinite time,
is fraudulent and void as to the other creditors, regard-
less of the good faith of the parties. It is not a question
of intent, but one of effect. Such a mortgage has the
effect of hindering, delaying, and defrauding creditors,

and all persons are presumed to intend the natural con-
sequences of their own acts, so that the good faith or bad
faith of the parties, as it actually existed, becomes im-
material. Such mortgages as this have the fraudulent
effect, and the fraudulent intent, if one is necessary, will
be presumed by the court from the terms of the mort-
gage itself. Being self-evident, it is not necessary to call
in a jury to determine the existence of fraud in this
class of mortgages. The provision of the Montana stat-
ute (sec. 231, div. 5, Comp. Stats.), that fraudulent intent
shall be deemed a question of fact, and not of law, does
not apply to a case like this, arising upon the face of the
written instrument itself, in such a way as to require its
submission to a jury. A similar statute exists in In-
diana, where the leading case of *Robinson* v. *Elliott* arose,
and was considered by the supreme court of the United
States in that case. From the case of *Robinson* v. *Elliott*,
referred to above, and from a great many other cases dis-
cussed at length in the able monograph of Mr. Pierce on
mortgages of merchandise, we may deduce the following
general principle : A mortgage of a stock of goods in
trade, under which the mortgagor is permitted by the
mortgagee to sell the goods at his discretion in the usual
course of his business, is inherently and essentially fraud-
ulent as to the creditors of the mortgagor; and this is so
even though the agreement or understanding between
the mortgagee and the mortgagor permitting such sales
is not shown upon the face of the mortgage, but is proven
by extrinsic evidence. The cases referred to, quoted, and
discussed by Pierce show this to be the rule in the courts
of the United States, and in the states of Colorado, Illi-
nois, Indiana, Minnesota, Mississippi, Missouri, New
Hampshire, New York, Ohio, Oregon, Tennessee, Texas,
Virginia, West Virginia, and Wisconsin. The same rule
is followed in the later cases of *Wineburgh* v. *Schaer*,
3 Wash. 333, 5 Pac. Rep. 299, and *Byrd* v. *Forbes*, 13

Pac. Rep. 715, decided by the supreme court of Washington territory, and in *Wilson* v. *Voight*, 9 Col. 614, 13 Pac. Rep. 727, decided by the supreme court of Colorado. The courts of several other states incline towards this rule, and 'very few, indeed, have held the contrary doctrine.

It is suggested that the case of *Robinson* v. *Elliott* has been limited or overruled by the case of *Bank* v. *Bates*, 120 U. S. 556. That case arose in Michigan, and appears to have been decided in accordance with the peculiar statutes and decisions of that state. Michigan, it will be borne in mind, is one of the few states which have never subscribed to the doctrine generally adopted by the courts of America; and all the cases cited in the case referred to, save that of *Robinson* v. *Elliott*, seem to be Michigan cases.

Mr. Justice Harlan, in delivering the opinion of the court in *Bank* v. *Bates*, uses the following language: "In behalf of the bank, it is contended that the mortgage to Bates was fraudulent as against subsequent creditors and mortgagees in good faith, in that the mortgagees contemplated that the mortgagors should remain in possession, and prosecute their business in the ordinary mode. The mortgage of February 7, 1881, certainly contains no provision of that kind. But if the extrinsic evidence established that such a course on the the part of Freedman Brothers & Co. was in fact contemplated by Bates, Reed, & Cooley, it would only show that the mortgagees were willing to give the mortgagors an opportunity to avoid a suspension of their business, and bankruptcy, the additions to the stock in trade being brought under the mortgage so as to compensate the mortgagees for any diminution in value by reason of goods disposed of in the usual course of business. If the mortgage had, in terms, made provisions for such a course on the part of the mortgagors, as the bank con-

tends was in the contemplation of the mortgagees, it would not be held, as a matter of law, to be absolutely fraudulent as to other creditors." *Robinson* v. *Elliott* is cited as one of the authorities for this proposition. We do not so understand the doctrine of that case. It is true that, according to that case, mere possession of the mortgaged goods by the mortgagor would not of itself invalidate the mortgage, unless it was held or retained by him for his own use and benefit; and in this sense the case of *Robinson* v. *Elliott* may be said, perhaps negatively, to support the proposition quoted. But the case as stated in *Bank* v. *Bates* would not fall within the rule laid down in the case of *Robinson* v. *Elliott*. But it will be seen that the passage above quoted from 120 U. S. is an *obiter dictum*, and was not necessary to the decision of the case under consideration by the supreme court. Under such a state of facts, we cannot regard the mere citation of a former case to have the effect of limiting or overruling the decision therein considerately made. We do not deem it necessary further to compare or attempt to reconcile these two cases, as the latter case is not at all parallel with the former, or with that now under our consideration.

Then, under the principle adduced from the cases discussed, it clearly appears that the second mortgage is void for fraud apparent upon its face, it being provided therein that the mortgagors might sell the mortgaged goods in the usual course of trade. Such a provision plainly implies that the proceeds of such sales are to be applied to the use and benefit of the mortgagors. But the first mortgage presents a different provision, it being stipulated therein that the mortgagors might " continue to sell the said stock of merchandise in the usual course of trade, accounting, however, as often as requested, and at least once a month, to the second party for the proceeds of all such sales." Such provision as this is

incompatible with the idea of security by a lien upon the goods. The only security that the mortgagees have is the personal integrity of the mortgagor in possession. But waiving this point, we must look, in this case, where a judgment has been rendered on the pleadings, to the terms of the pleadings contained in the record. We find in the replication that the bank, which is the mortgagee, after pretending to take possession of the stock of goods under the mortgage, left Silverman, the mortgagor, in possession of them to sell them with Hedderick, the agent of the bank, and that Silverman received a portion of the proceeds of the sales with the consent of the mortgagees. For the purpose of the judgment rendered below, all the allegations of the pleadings must be taken as true; and if these allegations of the replication were true, the first mortgage was also void. However, if it should not be determined that the provisions were sufficient on the face of the instrument to show the fraudulent effect of the mortgage, then extrinsic evidence, under these allegations, should have been admitted to prove that it existed. Then, looking at it from the standpoint presented by the record before us, the first mortgage stands in no better light than the second, and both should be considered as void under the statute of frauds and the decisions of the courts, which we feel constrained to follow.

2. Next, let us examine the position taken by the appellant, that the second mortgage is void because it is not properly sworn to under the statute of Montana heretofore quoted. The oath attached to the second mortgage reads as follows:—

" *Territory of Montana, County of Custer, ss.:* I. and F. Silverman, and Julius Rosenthal, agent of the mortgagee, the parties to the foregoing chattel mortgage, being severally duly sworn, each for himself says that the said chattel mortgage is made in good faith to secure the

amount named therein, and without any design to hinder or delay the creditors of the said mortgagor.

(Signed)                    " I. Silverman.

                         " Fannie Silverman.

                         " Julius Rosenthal.

" Subscribed and sworn to before me this twenty-second day of November, A. D. 1886.

(Signed)          " W. H. Ross, Notary Public."

The defect pointed out in this affidavit is, that it is not set forth therein that the mortgagee is absent from the territory, so as to give the agent the authority to make the oath as such under the statute; nor does it show which of the affiants is acting as the agent of the absent party. Disregarding the objection to the vagueness of the language in failing sufficiently to indicate which of the affiants is the agent of the mortgagee, it certainly seems clear that the absence of the party should be shown before the agent is allowed to make the affidavit in his stead. *Wiley* v. *Aultman,* 53 Wis. 560, and cases there cited; *State* v. *Washoe Co.,* 5 Neb. 320. This defect it is attempted to meet by the argument that the mortgage itself can be looked to in order to show the absence of the mortgagee. Even if it were allowable to look beyond the statutory oath for this purpose, the mortgage itself does not disclose the fact that the mortgagee is absent. Truly, it recites that A. Block & Co. are of Cincinnati, Ohio; but the mere fact that their residence is recited to be in Ohio is not an allegation that no one of the firm was present at the execution and delivery of the mortgage. The absence of the party to the mortgage should be clearly and unequivocally set forth in the affidavit itself before an agent should be allowed to make the oath required by the statute.

A further defect suggested in the affidavit is this, that there is nothing in the mortgage or affidavit to show the connection of Bohm Bros. & Co. therewith, and that, al-

though the pleadings and the accompanying affidavits show that the note secured by the second mortgage includes a sum of money due to Bohm Bros. & Co., no one even pretends to make oath to the mortgage in their stead. This objection is certainly fatal. It is not even attempted to comply with the law on their behalf; and for this reason also the affidavit must be held to be defective.

But if the mortgagees were really in undisputed possession of the goods mortgaged, no affidavit would be necessary at all, and the defects so apparent in the affidavit would become immaterial. But, from the pleadings and the affidavits, it is impossible to determine the exact *status* of the possession, and it is necessary to take evidence to settle that question of fact. For this reason it was not proper to consider this objection in determining the motion for a judgment on the pleadings, or to base the judgment of the court thereon, and we presume it was not noticed by the court below.

3. But an incidental question of great importance in the disposition of this case is the following: Are the appellants, as creditors holding the third mortgage on the stock of goods, but whose debt is not yet due, in a position to attack the prior mortgages for fraud? It is a rule extensively applied, that mere general creditors cannot attack a conveyance of this kind; that it is necessary for a creditor to put his claim into a judgment, and bring himself into privity with the property by the levy of an execution, or at least an attachment, before he will be heard to assert the invalidity of a prior conveyance. However, it is urged on behalf of the appellants that they are not mere general creditors, but, being mortgagees in possession, suing for a foreclosure of their mortgage, that they are brought into privity with the mortgaged property as completely as if they had levied an attachment or an execution thereupon. Whether or

not they are in possession, as has already been said, must be determined by the evidence, as the possession of each party is disputed in the pleadings. The question of possession, depending on the proof to be introduced on the trial, could not properly have been considered on the motion made below for judgment on the pleadings, and it was doubtless disregarded. And further, appellees insist that this is not a suit for the foreclosure of the third mortgage, but that the complaint asks only for the appointment of a receiver, and the sale of the mortgaged property by him, and its application for the payment of the plaintiff's debt. It is true, there is no formal prayer for the foreclosure of the mortgage, and the debt was not due at the filing of the suit. But under our statutes, the debt is not required, in all cases, to be due at the filing of the suit, though it may be necessary that it fall due before the decree of foreclosure is entered. Comp. Stats. Mont., div. 1, secs. 181, 183, 360. Whether or not the case at bar falls within the class of cases provided for by those statutes, it is not at present necessary to determine. But we certainly are not confined to the prayer alone in ascertaining the relief proper to be granted, but we may look to the whole complaint for that purpose. *Gillett* v. *Clark,* 6 Mont. 192.

On reading the whole complaint, it naturally occurs to us that there could have been no need to make the mortgagors parties to the suit if it was not sought to foreclose the mortgage; but on carefully considering the whole complaint, including the prayer for general relief, we are clearly convinced that this should be considered a suit for the foreclosure of the mortgage, while seeking the incidental relief of the appointment of a receiver to prevent the waste and misapplication of the property. It is true, the suit may have been prematurely brought, and if this objection were properly urged it might be entitled to great weight; but it is not before us.

The proposition that the junior mortgagee, seeking to foreclose his chattel mortgage, is brought into privity with the mortgaged property as completely as an attaching or execution creditor, is one deserving of serious consideration. The case of *Bank* v. *Bates*, 120 U. S. 556, seems to regard the junior mortgagee as a mere general creditor; but the point was not made as clearly in that case as it is presented here. The distinction between the junior mortgagee and the attaching creditor does not seem to be so clearly defined as might be supposed. It is the lien in each case that brings the party into privity with the property; and if the mortgagee is seeking to foreclose in a court of equity, or has taken possession under the statute, it would seem that his position was fully as advantageous as though he had levied an attachment or an execution on the property. *Cameron* v. *Marvin*, 26 Kan. 627. However, this question was not raised in the court below, and does not appear in the record, and being presented for the first time in this court by the printed briefs and oral arguments of counsel, needs no further consideration at present.

4. The most important one of the incidental questions presented in the record is this: Should the judgment on the pleadings have been rendered in favor of the defendants because the plaintiffs had a plain, speedy, and adequate remedy at law? Let us first inquire whether or not the plaintiffs had such a legal remedy. If both the first and second mortgages are void on their face, as is alleged in the plaintiff's pleadings, there can be no doubt that they had a remedy at law by an action of claim and delivery, under our statute, for the possession of the property. But does this fact preclude them from bringing a suit in equity to set aside the prior mortgages for fraud, and to foreclose the subsequent mortgage, and incidentally, of course, to have a receiver to preserve and dispose of the property and distribute the proceeds un-

der the direction of the court? In states where the two jurisdictions of law and chancery are strictly separated, and relief is administered in different courts or by the same court sitting in different capacities, this question might be answered in the affirmative. But in the territories of the United States there is only one court to try all causes, whether legal or equitable, and the blended system prevails to its fullest extent as established by acts of Congress.

Our territorial statutes also provide that "there shall be in this territory but one form of civil action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be the same in law and equity." Comp. Stats. Mont., div. 1, sec. 1. · In the case of *Twell* v. *Twell,* 6 Mont. 19, this court held that a woman who had been divorced, and obtained an order for fifty dollars per month alimony, to be paid by her husband, could maintain a creditor's bill to set aside a conveyance by the defendant, and to subject the property of her husband to the payment of her debt, without first issuing an execution on the order granting her alimony, or otherwise exhausting her legal remedies. In that case, Wade, C. J., delivering the opinion of the court, says: "It is immaterial whether the decree for alimony is called a judgment or not, or whether an execution might have been issued thereon. It was a debt of record ascertained by an adjudication in a court of competent jurisdiction, and the respondent thereby became a creditor, within the meaning of our statute. Proceedings by attachment, and the recovery of a judgment for the amount of alimony due, would not have aided her in the collection of her debt, or placed her in any better or stronger position than before such proceedings had been commenced. It was not necessary to have any further proceedings or adjudication to establish the respondent's debt and claim, and a creditor's bill was her

only remedy to aid her in the collection of what a competent court had declared she was justly entitled to." *Twell* v. *Twell*, 6 Mont. 28.

But even in the states where the distinction between the jurisdiction of courts of law and courts of equity is strictly maintained, creditors in cases like the present have been allowed to come into courts of equity for relief without first exhausting their legal remedies. In 1871 the supreme court of Illinois, in a case very similar to this, uses the following language: " The property in controversy is of the value of over one thousand dollars, and the bill alleges that the appellants have a mortgage upon the property. There are, then, successive liens and encumbrances, and if all are valid, there would be a trust fund to be distributed among the several claimants. The court was called upon to determine and adjust the rights and equities of the parties. A foreclosure by sale in the ordinary way could not have been made without injury to the adverse claimants. But it is contended that, as the bill denies the validity of the mortgage of appellants, there can be no investigation of the matter in chancery. There is no force in the objection. The bill alleges the existence of another mortgage, — an adverse claim, — and then charges that the same is void. If it is not void, the holders of it must share in the fund according to the equities of the parties. The allegations in the bill necessarily compel the court to determine as to the different liens. If, upon the hearing, it should be found that the mortgage of the appellants is void, it would be folly and inequitable to dismiss the bill, involve the complainants in costs, and remit them to their remedy at law. Equity is the law of reason, and cannot be chargeable with so great an absurdity." *Hammers* v. *Dole*, 61 Ill. 309, 310. And again, the supreme court of the United States, in a case from Louisiana, uses the following language: " The

bill charged that the conveyance of the partnership property, and the transfers by which it had been transferred to the railroad company, were illegal and fraudulent, that the bank had a privilege or lien upon the property, and it prayed that the various acts of sale, transfer, and conveyance by which the property that had belonged to the partnership had been conveyed to the railroad company, should be declared null and void, and that the property should be declared to be liable to the payment of the amount due the bank. Thus it appeared that the bill exhibited all that was necessary to give to the court, sitting as a court of equity, complete jurisdiction over the subject of the controversy between the parties, and over all the equities now asserted by the complainant in his present suit." *Case* v. *Beauregard*, 101 U. S. 692.

These cases appear to us to be strictly in point, and worthy to be followed. Doubtless they could be readily multiplied by searching the reports of those states which, like this territory, have blended the jurisdiction of law and equity courts. Under our statutes, and the practice which must prevail in courts whose law and equity powers are blended like ours, it would clearly appear that, in a case like the present, where plaintiffs have brought a civil action for the enforcement and protection of their rights, or the redress and prevention of their wrongs, it is the duty of the court to grant such relief as the complaint, and the proof made thereunder, show them entitled to receive, without any distinction between law and equity. If they have a remedy at law, let it be enforced; and if the remedy is an equitable one, let it be applied in like manner. It is useless for courts to attempt to preserve artificial distinctions which the statutes have swept away.

Holding these views, in accordance with the authorities quoted, we cannot believe that the judgment should

have been rendered in favor of the defendants simply because, on an inspection of the plaintiff's pleadings alone, they may have had, or clearly did have, a plain, speedy, and adequate remedy at law. However, looking at all the pleadings on both sides, this is clearly a case calling for the exercise of equity powers, and a court of equity, in the strictest exercise of its chancery jurisdiction, could readily take cognizance of it. Here were three mortgages, two of which are alleged to be void. They must be examined, and their validity determined, and the priorities adjusted. Then they must be ranked according to their priority, and if foreclosed, the proceeds must be received and distributed under the direction of the court, and the several conflicting claims of all parties must be preserved and adjusted,—all of which would fall within the chancery powers of the court. This judgment on the pleadings, which is, in effect, a dismissal of the plaintiff's suit, or an involuntary nonsuit, compels them to come again into the same court, on the same state of facts, with probably a different prayer for relief. This, under our practice, is a vain and useless proceeding, and should not be required. But a judgment on the pleadings should never be rendered where material issues involved require the taking or evidence before they can be properly determined, and there are several issues which may be material to the decision of this cause which depend on the proof to be adduced, one of which is the possession of the parties under the several mortgages.

Unless all the material issues can virtually be settled by the pleadings, a judgment on the pleadings should not be rendered for either party. Holding, then, that the order of the court below, rendering judgment for the defendants upon the pleadings, was erroneous, this case must be reversed, and the cause remanded, to be pro-

cedeed with in accordance with the views expressed in this opinion. This judgment is therefore reversed, with costs.

*Judgment reversed.*

McCONNELL, C. J., and GALBRAITH, J., concur.