SCHWAB ET AL., APPELLANTS, v. OWENS ET AL., RESPONDENTS.

CHATTEL MORTGAGES—*Fraud as to creditors.*—A chattel mortgage upon certain described articles of bar furniture, which concludes the description with the words, "also, all the wines, liquors, and cigars now in and upon said premises, of whatever kind, character, or description, whether for consumption or otherwise," and which provides that the mortgagee may "remain in possession, and carefully use" the mortgaged property, but expressly forbids the mortgagor to "make way with, sell, or in any manner dispose of" the same, is not by its own terms fraudulent and void as to creditors of the mortgagor. (*Leopold* v. *Silverman,* 7 Mont. 266, distinguished.)

SAME—*Description—Future purchases and sales.*—In the case at bar the main portion of the mortgaged property, as appeared from the mortgage, was a lot of specific articles of furniture described. What the "wines, liquors, and cigars now in and upon said premises" were as to kind, quantity, or value was not disclosed by the mortgage. *Held,* that while the question as to whether the mortgage conveyed any merchandise by reason of the uncertainty and obscurity of description was not before the court for determination, still, in no case could the mortgage be construed to cover future purchases of merchandise; nor could the mortgage be shown to be a fraudulent transaction by introduction of evidence of purchase and sale of other merchandise after the execution thereof.

SAME—*Priorities—Replevin—Damages.*—A chattel mortgage, which is neither fraudulent on its face, nor taken for any fraudulent purpose, is good as between the mortgagor and mortgagee, and another mortgagee of the same property from whom the property is replevied by the first mortgagee can only recover the amount secured by his mortgage in the absence of a redelivery of the property. Where the amount claimed in such case is four hundred and fifty dollars, a verdict for the sum of one thousand eight hundred and fifty dollars is excessive, and a new trial will be granted.

*Appeal from First Judicial District, Lewis and Clarke County.*

The cause was tried before GALBRAITH, J., sitting in place of HUNT, J. Defendants had judgment below.

*Henry C. Smith,* and *C. B. Nolan,* for Appellants.

Appellants having by virtue of the power contained in the mortgage taken possession of the property prior to the 17th of September, 1888, when defendants took possession from them, occupied the same position as though possession had accompanied the mortgage at the time it was executed. (*Frank* v. *Miner,* 50 Ill. 444; *Chapman* v. *Weimer,* 4 Ohio St. 481; *Chipron* v. *Feikert,* 68 Ill. 284; *Chase* v. *Denny,* 130 Mass. 566; *Greeley* v. *Reading,* 74 Mo. 309; *Brown* v. *Webb,* 20 Ohio, 389; Jones on Chattel Mortgages, § 178.) The appellants having taken possession of the property, it was an identification and appropriation of the specific property to them. (*Morrow* v. *Reed,* 30 Wis. 84.) The appellants having taken possession under the mortgage before defendant Schlesinger acquired any rights thereto, cured any invalidity by reason of Levy continuing in possession and carrying on the business in the usual way. (Jones on Chattel Mortgages, § 178, citing, *Nash* v. *Norment,* 5 Mo. App. 545.)

*McConnell & Clayberg, Shober & Rowe,* and *M. S. Gunn,* for Respondents.

The provision that the mortgagor should remain in possession of the property, etc., made the mortgage fraudulent and void as to creditors, *per se,* but the findings of the jury make the whole mortgage transaction a fraudulent one, irrespective of the provision above referred to. (*Leopold* v. *Silverman,* 7 Mont. 266; *Robinson* v. *Elliott,* 22 Wall. 513; *Wilson* v. *Voight,* 7 Colo. 614.) For general discussion of mortgages of this character, see Pierce on Fraudulent Mortgages of Merchandise. The possession relied upon by appellants is founded upon a fraudulent transaction, and hence can avail them nothing. (Pierce on Fraudulent Mortgages of Merchandise, § 143, and cases cited; *Robinson* v. *Elliott,* 22 Wall. 513; *Blakeslee* v. *Rossman,* 43 Wis. 126; *Delaware* v. *Ensign,* 21 Barb. 85; *Stein* v. *Munch,* 24 Minn. 390; *Janvrin* v. *Fogg,* 49 N. H. 340; *Armstrong* v. *Tuttle,* 34 Mo. 432.)

HARWOOD, J.—Appeal from judgment and order overruling motion for new trial.

This action was brought to recover possession of certain per-

sonal property. The plaintiffs were mortgagees of the chattels in controversy by virtue of a mortgage executed and delivered to them by one Julius Levy, to secure the payment of four thousand dollars, evidenced by a promissory note described in the mortgage. The chattels described are a lot of specific articles, such as "a bar and work board, back bar, 5x12 mirror and frame, one bottle case, ice-box, screen, 5x15 mirror, cigar counter and case, two faro tables, eighteen chairs, three chandeliers, five hanging lamps, one clock," etc. The description being specific as to a lot of saloon fixtures, and a certain lot of bedroom furniture situate in a certain building. This descriptive portion of the mortgage closes with the following words: "Also all the wines, liquors, and cigars now in and upon said premises, of whatsoever kind, character, or description, whether for consumption or otherwise." The mortgage provides that the mortgagor should "have the right to remain in possession, and carefully use" said property until default was made under the conditions of the mortgage; and further provides, among other things, that if the mortgagor should "make way with, sell, or in any manner dispose of said described property, or any part thereof, or attempt to do so," then in any such event the mortgagee should have the right to the immediate possession of said property.

It appears from the evidence that the mortgagor remained in possession of all of the mortgaged property for the period of about one month from the execution and delivery of the mortgage, during which time he carried on the business of buying and selling liquors and cigars, the same as he had before the execution of the mortgage. About a month after the mortgage was given the mortgagor came to the mortgagees, saying he would turn the property over to them and they "may get out of it the best they could." Thereupon the mortgagees took possession of the property, and put their watchman in possession thereof, to watch and take care of the same for them. The property remained at this time in a building owned by defendant, Emily Schlesinger, where the mortgagor had been carrying on business. When plaintiffs took possession of said property on the 29th of August, said defendant, Emily Schlesinger, by her agent, B. J. Schlesinger, granted, in writing, permission to

plaintiffs to store said chattels in said building, " free of charge, until September 15, 1888."

On the 17th of September, 1888, as appears by the evidence, while plaintiffs' watchman was temporarily absent from said building, the defendant, B. J. Schlesinger, as agent for his wife, Emily Schlesinger, took possession of said goods, and put other locks on the doors of said building, and excluded plaintiffs from the possession thereof.

The defense interposed by the defendant's answer was a denial of the allegations of plaintiffs' complaint and new matter, which may be stated in effect as follows : (1) That plaintiffs' mortgage upon said chattels "was made by Julius Levy for the sole purpose of hindering, delaying, and defrauding the creditors of Al. Owens and Julius Levy," and that defendant, Emily Schlesinger, was their creditor to the extent of four hundred and fifty dollars at the time said mortgage was executed. (2) That defendant, Al. Owens, was a copartner, equal with said Levy, in the ownership of said goods and chattels, and that said mortgage was made to plaintiffs without the consent of said Al. Owens, and for a purpose foreign to said copartnership and without consideration. (3) That after the execution and delivery of said mortgage plaintiffs "permitted said Owens and Levy, as partners, to openly and notoriously sell and dispose of said mortgaged goods and chattels in the usual course of the saloon business, in the same manner as before the execution of said mortgage. (4) That said goods and chattels were sold and delivered to defendant, B. J. Schlesinger, as agent of Emily Schlesinger, by the firm of Levy and Owens through Al. Owens, one of said firm, on the 17th of September, 1888," as shown by a bill of sale attached to defendant's answer as a part thereof.

The instrument attached to defendant's answer recites that "Julius Levy and A. T. Owens, copartners under the firm name and style of Julius Levy (A. T. Owens being a silent partner), the lessees, for and in consideration of the sum of five hundred dollars to us in hand paid, and for the further sum of four hundred and fifty dollars rent due Emily Schlesinger, lessor," the said goods are sold and assigned to said lessor. Said instrument further provides: "That said lessor, Emily Schlesinger, her agent or attorney, shall be entitled to take

immediate possession of all of said goods and property, and shall take an invoice thereof, and shall sell all of the same to the highest bidder, at private sale or otherwise, and the balance of the proceeds remaining, if there be (any) over and above the above-named consideration, to wit, four hundred and fifty dollars, for cash paid and for rent due," and reasonable commission fees, etc., "all of which shall be retained by said lessor, Emily Schlesinger, shall be paid over to the above-named Julius Levy and A. T. Owens, a partnership as above stated."

This instrument is executed by said A. T. Owens with all the solemnities required for the execution of a chattel mortgage, according to the laws of the Territory of Montana at the time the same was executed, and was filed for record September 18, 1888. It also appears from the evidence that said instrument was considered by the party of the second part as a mortgage, for her agent says in his testimony that he took possession of said property September 17, 1888, "by virtue of *a mortgage for rent due*," and he refers to the instrument elsewhere as a mortgage. Al. Owens, who executed said instrument, in his testimony also speaks of it as a mortgage, given "for the purpose of securing money for rent." The feature of said instrument which indisputably stamps it with the character of a chattel mortgage is its own condition, that the property transferred shall be sold by the party of the second part, and the proceeds applied by her to the payment of her stated claim, and that the residue should be paid to the firm of Levy and Owens. The instrument will be treated as a chattel mortgage.

There is no question before us relating to the rights, interests, or claims of defendant, Al. Owens, in respect to the property in controversy.

The first question to be solved is whether plaintiffs' mortgage was, by its own terms and conditions, fraudulent and void as to creditors, under the doctrine held in *Leopold* v. *Silverman*, 7 Mont. 266, as contended by respondent's counsel. It will be seen by comparison that the instruments in question are radically different. The mortgages under consideration in *Leopold* v. *Silverman* contained a provision, "that the said parties (mortgagors) may continue to sell the said stock of merchandise in the usual course of trade," and notwithstanding that

one of the instruments contained a provision to the effect that the mortgagors should account for the proceeds as often as requested, and "at least once a month," the fact appeared by the pleadings as the case stood, that the mortgagors retained a portion of the proceeds by the knowledge and consent of the mortgagees. The mortgagors in that case were merchants, and the property mortgaged was "their stock in trade." In the case at bar the main portion of the mortgaged property, so far as the mortgage shows, was a lot of specific articles of furniture, described. What "the wines, liquors, and cigars, now in and upon said premises," was, as to kind, quantity, or value, is not disclosed by the mortgage, nor by any evidence *aliunde.* There is no power to sell any of the mortgaged goods and chattels provided by the conditions of this mortgage. On the contrary, that act is expressly made a violation of its conditions, as well as the act of "making way with, or in any manner disposing of said described property." These conditions may be inconsistent with the provisions allowing the mortgagor " to remain in possession of and carefully use" property mentioned in said mortgage, necessarily consumable by the use thereof. But we are not now considering that feature of the instrument. Moreover, inconsistencies in an instrument do not *per se* vitiate the same. (Comp. Stats. §§ 628–638.) Nor are we now to consider whether said mortgage was void as to any attempt to include merchandise therein, for the reason of uncertainty of description as to that. The question is, shall this mortgage be declared fraudulent and void by reason of its own terms? We think not. The mortgage in the case at bar is not like the mortgages declared void in the case of *Leopold* v. *Silverman, supra,* or others of a kindred nature which have been declared void by reason of their own conditions, in numerous well-considered cases. (Pierce on Fraudulent Mortgages of Merchandise, and cases cited.)

Closely connected with this branch of the case is the defense, wherein defendants allege that after the execution of the mortgage of plaintiffs, they permitted said Levy and Owens to openly and notoriously sell and dispose of said mortgaged goods and chattels in the usual course of trade. We have already noticed the obscurity and uncertainty of plaintiffs'

mortgage, as to what was intended to be described by the clause "all wines, liquors, and cigars, now in and upon said premises." Much evidence was introduced tending to show that after the execution of the mortgage to plaintiffs the mortgagor continued to buy and sell wines, liquors, etc., in his saloon business, as usual. It appears that the case was tried on the theory that such goods were covered by the mortgage. On no other theory can we account for the introduction of so much evidence as to what merchandise used in the saloon trade was bought and sold by the mortgagor after the execution of said mortgage. Even if said clause was sufficient as descriptive of anything (a point upon which we express no opinion because it is not before us on that question), it could not be held that the words "wines, liquors, and cigars, *now* in and *upon said premises*" included or covered future purchases and sales of such merchandise. The evidence does not show, if indeed evidence *aliunde* could be permitted to show, what goods were intended to be covered by said clause; nor that such goods were sold; nor that any specific article included in the mortgage was sold. If the jury arrived at their special or general verdict on this point, by a consideration of evidence introduced to show that after the execution of said mortgage the maker of it was allowed to buy and sell such merchandise, and for that reason the mortgage was void or voidable, clearly the verdict is not supported by the evidence.

Was the plaintiffs' mortgage shown to be void by the allegation and proof of facts sufficient to support the conclusion that the transaction was consummated by plaintiffs and said Levy, with the intent to hinder, delay, or defraud the creditors of the mortgagor? The allegations of the answer upon this point would hardly bear criticism; however, counsel have not directly raised a question as to the sufficiency of such allegations, and we shall therefore only notice them in connection with the specification that the evidence is insufficient to support the verdict. The allegation is that plaintiffs' mortgage was made "by one Julius Levy, for the sole purpose of hindering, delaying, and defrauding the creditors of Al. Owens and Julius Levy." There is no allegation of privity or conspiracy on the part of plaintiffs in the alleged scheme to defraud the creditors

of Owens and Levy, nor is there proof of any such fact. (Van Santvoord's Pleading, 147; Wait's Fraudulent Conveyances, §§ 141, et seq. and 199.)

The answer contains an allegation to the effect that plaintiffs' mortgage was made "without consideration"; but there is no evidence to support that allegation. The evidence on that point is all against it, and the special findings of the jury are contrary to that averment. The jury found that there was no intention on the part of plaintiffs to commit fraud in obtaining said mortgage, and that they took the same to protect themselves. Another aspect of the case deserves notice. Among the grounds on which appellants ask for a new trial, they specify excessive damages, and that the verdict is against law, as well as insufficiency of evidence to justify the verdict. The instrument on which defendant, Emily Schlesinger, bases her claims to the possession of said property is demonstrated from its own terms to be a chattel mortgage for security of her claim against Owens and Levy. If plaintiffs' mortgage was held to be void as against her claim, or subsequent to her mortgage, it does not necessarily follow that plaintiffs' mortgage is not good as between plaintiffs and the mortgagor (Comp. Stats. 5th div. §§ 229, 1538), and on the finding by the jury that there was no intent on the part of plaintiffs to defraud any one in taking said mortgage, and the same not being such an instrument, as by its own terms fraud could be imputed to it, does it not follow that as between plaintiffs and Emily Schlesinger, if her claim on said property was precedent to plaintiffs (a fact which we in no way decide here), she was then only entitled to recover from plaintiffs the amount of her claim secured by her mortgage, in the absence of the redelivery of said property? What was the amount of her claim? The mortgage executed to Emily Schlesinger recites that it was made in consideration of eight hundred and fifty dollars, money and rent due the party of the second part; yet in the body of that instrument she is authorized to retain out of the proceeds of the property four hundred and fifty dollars "for cash paid and rent due" besides expenses of sale, fees, etc. The evidence introduced in reference to her claim shows still a different amount as due. B. J. Schlesinger, husband and agent, who attended to the interests of Emily

Schlesinger, testifies that he took possession of said property "September 17, 1888, by virtue of a mortgage for rent due." Again he says: "The rent was paid up to August;" and again: "There was two hundred and twenty-five dollars rent due on the 27th of August; I took possession on the 17th of the next month;" and again: "When I gave him this paper there was only two hundred and twenty-five dollars due from Owens and Levy." The paper referred to was the written permission given to plaintiffs by the witness as agent for Emily Schlesinger, on August 29th, allowing said chattels to remain in her building until September 15th, "free of charge." Two days later the witness took possession of said goods for his wife Emily. Another witness on behalf of defendent says her claim for rent was about four hundred and fifty dollars, and that Owens made the mortgage to her to secure this rent. No other claim was proved in her favor; yet the jury returned a verdict in her favor for one thousand eight hundred and fifty dollars in case redelivery of the property was not made. This was undoubtedly excessive. The jury ought to have found what her claim secured by said property was, and her recovery should not exceed that. The verdict of the jury is not sustained by the evidence, and therefore a new trial ought to be granted.

The record before us in this case has been prepared in a manner so grossly in violation of the rules of this court, it ought to have been promptly stricken from the files, without consideration, beyond an observation of its defects. The documentary evidence is not found in its proper place in the record, but these documents, together with depositions on both sides, are bundled together in a sort of appendix near the close of the statement of the case. The depositions are not reduced from questions and answers to the compactness of narrative, and in one case the questions are found in one document and the answers in another. These exhibits are found with no little inconvenience, in a voluminous record, without proper index, and written on paper which violates the rules of court. It is the duty of appellants' counsel to see that the record is properly made. This record has only been tolerated by reason of our unwillingness to impose the expense of preparing the record anew upon liti-

gants. But hereafter these irregularities will be corrected by striking such records from the files of the court.

The judgment and the order overruling appellants' motion for a new trial are hereby reversed and the cause remanded for trial *de novo.*

BLAKE, C. J., and DE WITT, J., concur.