SCHWAB ET AL., APPELLANTS, *v.* OWENS ET AL., RESPONDENTS.

[Argued November 23, 1891.  Decided January 25, 1892.]

CHATTEL MORTGAGES — *Fraud — Instructions.* — In an action by the mortgagees of chattels to recover the possession thereof from a subsequent mortgagee the jury returned a general verdict for the defendant mortgagee, and found specially that the plaintiffs' mortgage, which was made by a partner, without the knowledge or consent of his copartner, who was a joint owner, was taken by plaintiffs with knowledge of such facts and with the intent to defraud the mortgagor's copartner and other creditors.  Plaintiffs assigned error upon instructions by the court to the effect that if the plaintiffs had knowledge that the mortgagor's copartner was a joint owner of the chattels and did not know of or consent to said mortgage then it was void as to creditors, and that as the pleadings showed the possession of the chattels to have been in the defendant at the time of the commencement of the action, the possession was presumed to be rightful, and it devolved upon the plaintiffs to show by a preponderance of evidence that such possession was wrongful.  *Held*, that though such instructions might be conceded to be erroneous, the findings of fraudulent intent or *malum in se* vitiated the entire transaction, and plaintiffs would not be entitled to recover.  (*Rocheleau* v. *Boyle, ante*, p. 451, cited.)

*Appeal from First Judicial District, Lewis and Clarke County.*

Action for the recovery of the possession of mortgaged property.  The cause was tried before BUCK, J.  Defendant Schlesinger had judgment below.

Upon the trial the court instructed the jury as follows:—

"1. If you find from the evidence in this case that Schwab and Zimmerman took possession of the property mentioned in their complaint and covered by their chattel mortgage on the twenty-ninth day of August, 1888, by virtue of said chattel mortgage, and held possession thereof until September 18, 1888, when B. J. Schlesinger took possession thereof, then you must

find a verdict for the plaintiffs, providing you also find from the evidence that the said chattel mortgage was not executed for the purpose of hindering, delaying, or defrauding creditors, and that there was an indebtedness due plaintiffs by the business of the Pelican Saloon, at the time of the execution of said mortgage, which remained unpaid, and said plaintiffs had no knowledge of the existence of a partnership in said business, composed of Julius Levy and the defendant, A. T. Owens. (2) You are the judges of the credibility of the witnesses, and of the weight to be attached to the testimony of each and all of them, and you are not bound to take the testimony of any witness as absolutely true, and you should not do so if you are satisfied from all the facts and circumstances proven on the trial that such witness is interested in the matter testified to by him, and has testified falsely on that account, or if for any other reason his testimony is untrue or unreliable. (3) If the jury believe from the evidence that any witness has wilfully sworn falsely on the trial as to any matter or thing material to the issues in the case, then the jury are at liberty to disregard his entire testimony, except in so far as it has been corroborated by other credible evidence, or by facts and circumstances proven on the trial. (4) This is an action for claim and delivery, brought by the plaintiffs against the defendants for the recovery of the goods and chattels described in the plaintiffs' complaint. The plaintiffs claim the right to the possession of the said goods and chattels under and by virtue of the powers contained in a certain chattel mortgage executed by Julius Levy to said plaintiffs on the twenty-seventh day of July, 1888, covering the property described in plaintiffs' complaint, and by virtue of a delivery of said chattels to them by said Levy in behalf of his firm. The defendants deny that plaintiffs are or ever were entitled to the possession of said goods and chattels, and aver that the said mortgage was and is fraudulent and void, and was given for the purpose of hindering, delaying, and defrauding the creditors of the copartnership of Owens and Levy, doing business under the firm name of Julius Levy. The defendant, Emily Schlesinger, further claims that she was at the time of the commencement of this suit, and now is, entitled to the possession of all of the said goods and chattels described in plaintiffs' complaint. (5) You

are instructed that you are to determine from the evidence and from the instructions of the court who was entitled to the possession of the property described in the plaintiffs' complaint at the time this suit was begun. The rights of the parties to this action are determined by the state of facts that existed at the time of the commencement of this action. (6) You are further instructed that if you find from the evidence that Schwab and Zimmerman, or either of them, prior to the execution of said mortgage, had knowledge that Owens was a partner of Levy and joint owner of said property, and that said Owens did not know of or consent to said mortgage, then said mortgage is absolutely void as to the creditors of the copartnership of Owens and Levy, doing business under the firm name of Julius Levy. (7) You are further instructed that if you find from the evidence that, prior to the execution of said mortgage, Schwab and Zimmerman, or either of them, had knowledge that Owens was a partner of Levy and joint owner of said property, and that said mortgage was executed without the assent of said Owens, and that Owens repudiated the same as soon as he learned of said mortgage, then said mortgage cannot be deemed to be an act of the firm, and did not bind the firm's property. (8) You are further instructed that if you find from the evidence that Emily Schlesinger was a creditor of the copartnership of Owens and Levy, doing business under the firm name of Julius Levy, and that possession of the said property was turned over to her or her agent, B. J. Schlesinger, by Al. Owens, one of the firm of Julius Levy, for the purpose of securing a debt of said firm to said Emily Schlesinger, and that said Emily Schlesinger, by herself or agent, was in possession of said property at the time it was taken by the sheriff in this action, and that under the evidence and instructions of the court the mortgage to Schwab and Zimmerman was void, and further, that they had never acquired any prior possession of said chattels to secure an indebtedness of the business of Julius Levy to them, then your verdict must be for the defendants. (9) You are further instructed that the plaintiffs must establish the validity of their mortgage or their right to the possession of said property at the time of the commencement of this suit by a preponderance of the evidence. (10) This is an action under the provision of

the laws of the State of Montana on the part of the plaintiffs against the defendants. All of the material allegations of plaintiffs' complaint are denied by the defendants, and throws the burden of proof upon the plaintiffs; and unless the plaintiffs have satisfied you, by a preponderance of evidence, that they have a better right to the possession of the property in controversy than the defendants, or any of them, then your verdict should be for the defendants. (11) The jury are instructed, as a matter of law, that the pleadings show that the property was in the possession of the defendants at the time of the commencement of this action, or some of them, and it is presumed the possession thus held was rightful; and it devolves upon plaintiffs to show by a preponderance of evidence that such possession was wrongful, and, if the evidence fails to so show, your verdict should be for the defendants. (12) If the jury find from the evidence that Levy and Owens, under the firm name and style of Julius Levy, were the owners of the property in controversy, and that no possession of said property was delivered to plaintiffs, and that Owens, as one of said firm, maintained possession of the same until the same was delivered to Schlesinger, then your verdict should be for defendants. (13) If the jury find from the evidence that Schwab and Zimmerman never took possession of said property until after possession was delivered to Schlesinger, and that possession was so delivered to Schlesinger to secure the indebtedness of Emily Schlesinger and other creditors of the firm of Levy under the partnership of Levy and Owens, and that Levy and Owens jointly, as such partnership, owned said property, and that Emily Schlesinger was at the time of the execution of said mortgage a creditor of Levy and Owens, then the jury should find for defendants. (14) If the jury believe from the evidence that Owens was a silent partner in the business conducted in the name of Julius Levy, and without knowledge of such fact the plaintiffs advanced money to Levy or sold him goods for the purpose of carrying on such business, and, in order to secure the indebtedness so incurred by him, Julius Levy executed and delivered the chattel mortgage to plaintiffs, and that such indebtedness was not paid the plaintiffs, then your verdict must be for the plaintiffs. (15) If the jury believe from the evidence that the business of the Peli-

can Saloon was actually indebted to the plaintiffs at the time
Levy executed the chattel mortgage to them, and that with full
authority, express or implied, from Owens, to execute said chat-
tel mortgage, Julius Levy did execute the same, then the jury
must find for the plaintiffs. (16) If the jury believe from the
evidence that the business of Levy and Owens was actually
indebted to the plaintiffs at the time it is claimed by the plaint-
iffs the property in dispute was turned over to them, and that
with the consent of Owens, if the plaintiffs knew of his being a
partner, or without his knowledge or consent if they did not
know of his being a partner, Levy turned over the actual pos-
session of said goods to plaintiffs for the purpose of securing
such indebtedness, then you must find for the plaintiffs. It is
admitted by the pleadings in this case that the value of the
property is $2,500; and, if you find for the defendants, your ver-
dict must be for the return of the property, or, if a return cannot
be made, for the value of it, assessed at $2,500, or as much more
as said property was worth, according to the evidence."

Plaintiffs and defendants submitted certain questions to the
jury, which returned a general verdict for the defendant, Emily
Schlesinger, and the following special findings:—

"1. Did the plaintiffs Schwab and Zimmerman, or either of
them, know of the existence of the partnership between A. T.
Owens and Julius Levy, under the firm name of Julius Levy,
at the time of the execution and delivery of the chattel mort-
gage of July 27, 1888? Answer. Yes. (2) Was there any
intention on the part of the plaintiffs to commit any fraud upon
any one when they took this mortgage? A. Yes. (3) For
what purpose did Schwab and Zimmerman take this mortgage?
A. To defraud the creditors and A. T. Owens. (4) Who
was in possession of this property from August 29, 1888, to
September 17, 1888? A. Schwab and Zimmerman. (5) Did
Schwab and Zimmerman, or either of them, know, prior to the
execution of said mortgage, that Owens was a partner of Levy,
and a joint owner of said property? A. Yes. (6) Did
Schwab and Zimmerman, or either of them, have means of
knowledge of the fact that Owens was a partner of Levy, and
joint owner of said property, prior to the execution of said
mortgage? A. Yes. (7) In what amount was Levy in-

debted to the plaintiffs, or either of them, at the time of the execution of said mortgage? A. $1,960.30. (8) Did Schwab and Zimmerman, or either of them, permit Levy to remain in possession of the wines, liquors, and cigars described in said mortgage, and to sell the same at his discretion, in the usual course of business? A. Yes. (9) Was Emily Schlesinger a creditor of the copartnership of Owens and Levy, doing business under the firm name of Julius Levy, at the time of the execution of said mortgage, and also at the time the property described in said mortgage was taken possession of by defendant, Emily Schlesinger, or her agent? A. She was a creditor after the 15th of August. (10) Were there other creditors of the copartnership of Owens and Levy, doing business under the firm name of Julius Levy, at the time of the execution of the said mortgage? A. Yes. (11) Did Owens assent to the giving of said mortgage by Julius Levy to the plaintiffs? A. No. (12) What was the value of the wines, liquors, and cigars in said saloon at the time of the execution of said mortgage, and what was the value of the fixtures? A. Wines and liquors and cigars, $1,850; fixtures, $650."

*Henry C. Smith, C. B. Nolan,* and *J. A. Carter,* for Appellants.

The whole ground for both replevin and detinue is covered by our Code provisions for the recovery of personal property. (*Wilson* v. *Rybolt,* 17 Ind. 391; 79 Am. Dec. 486.) The plaintiffs having peaceably and notoriously taken possession on the 29th of August, 1888, the taking by defendants being covert and wrongful, is a proper occasion for plaintiffs bringing this action. (*Bruen* v. *Ogden,* 11 N. J. L. 370; 20 Am. Dec. 593.) Replevin lies in all cases where trespass can be maintained for taking and carrying away goods. (*Bruen* v. *Ogden, supra.*) The defendants do not in their pleadings set up title in themselves; they deny, however, that plaintiffs ever had possession; they attempt to charge fraud in plaintiffs' mortgage, and the court following the theory of fraud in giving its instructions to the jury, the theory of the whole case was apparently that of fraud. Wherein were respondents entitled to escape the burden of proving such fraud? It will not be denied but that had there been no pretense of fraud plaintiffs

would have recovered. There is no conflict in the evidence as to the fact that plaintiffs were in possession, so instruction No. 11, "that as a matter of law defendants' possession is presumed rightful," is erroneous under the pleadings and evidence; such an instruction might have been proper if this action was in the nature of detinue. Instruction No. 9, "that plaintiffs should establish the validity of their mortgage, or their right to the possession of the property *at the time of the commencement of this suit,* by a preponderance of the evidence," is erroneous in view of said instruction No. 11, and under the pleadings and evidence, for the taking by defendants and not the mere detention by them occasioned this action, and as has been seen the apparent theory of this case was that of fraud in plaintiffs' mortgage. How, then, can it be said that plaintiffs should prove no fraud by a preponderance of the evidence. In order that fraud can avail as a defense the facts constituting such fraud must be distinctly averred. (*Gray* v. *Earl,* 13 Iowa, 188. See *Curtis* v. *Valiton,* 3 Mont. 153; Wait on Fraudulent Conveyances, 199.) Instruction No. 6, "that if plaintiffs, prior to their mortgage, had knowledge that Owens was a partner of Levy's and joint owner of said property, and that Owens did not know of or consent to said mortgage, then said mortgage is absolutely void as to the creditors of the partnership," is erroneous, for, as has been noticed, the defendants were not in court as creditors. The principles of law on which this case should have been presented to the jury demand, under the pleadings and evidence, different instructions, findings, and verdict. (*Keeley* v. *Cable Co.* 7 Mont. 81.) And, notwithstanding all, the law applicable to this case may, under the pleadings and evidence, warrant judgment in favor of plaintiffs. (See language of the court concluding the opinion in the case of *Tolbert* v. *Horton,* 33 Minn. 104. See *Curtis* v. *Valiton,* 3 Mont. 153.)

*McConnell & Clayberg, M. S. Gunn,* and *Shober & Rasch,* for Respondents.

I. The jury found that appellants took said mortgage for the purpose of defrauding the creditors and A. T. Owens; that Levy was only indebted to Schwab and Zimmerman in the sum

of $1,960 at the time of the giving of said mortgage; that the value of wines, liquors, and cigars embraced in said mortgage was $1,850, and that the value of the fixtures included in said mortgage was $850. This court has held that the mortgage was not fraudulent *per se.* But when this case was before this court on a prior appeal (10 Mont. 381) there was no evidence of the value of the wines, liquors, and cigars included in the mortgage; and as their value is now determined, and it is shown to be far in excess of the value of the fixtures, we believe that the mortgage should now be held to be fraudulent *per se.* (*Leopold* v. *Silverman,* 7 Mont. 266; *Robinson* v. *Elliott,* 22 Wall. 513; *Wilson* v. *Voight,* 9 Colo. 614.) But even though it should be held that the mortgage is not fraudulent *per se,* still, under the findings of the jury, it is shown to be fraudulent by reason of extrinsic facts. As appellants do not claim any right to the property except under this fraudulent mortgage, they cannot maintain this action. If the appellants ever had possession of the property, as it was a possession under a fraudulent mortgage, it conferred no rights whatever. (Pierce on Fraudulent Mortgages of Merchandise, § 143, and cases cited; *Robinson* v. *Elliott,* 22 Wall. 513; *Blakeslee* v. *Rossman,* 43 Wis. 126; *Delaware* v. *Ensign,* 21 Barb. 85; *Stein* v. *Munch,* 24 Minn. 390; *Janvrin* v. *Fogg,* 49 N. H. 340; *Armstrong* v. *Tuttle,* 34 Mo. 432.)

II. The jury also found that appellants knew, prior to the execution of said mortgage, that Owens was a partner of Levy's and joint owner of said property; and further found that Owens did not assent to the giving of said chattel mortgage. Under these findings, the mortgage conferred no right upon the mortgagees, except as to the surplus of the assets after settlement of the accounts of the firm. Appellants had no right to the possession of this property until after all of the firm creditors had been paid. (*Sheehy* v. *Graves,* 58 Cal. 456; *Moline Wagon Co.* v. *Rummell,* 12 Fed. Rep. 658; *Clements* v. *Jessup,* 36 N. J. Eq. 571; *Lane* v. *Lenfest,* 40 Minn. 375; Jones on Chattel Mortgages, 45.) Emily Schlesinger, having been a creditor of the firm at the time, was entitled to the possession of the property as against appellants.

III. Appellants cannot now be heard to say that the alle-

gations of fraud in the complaint were insufficient. Where the complaint does not state a cause of action it may be taken advantage of for the first time in the Supreme Court, but that where the complaint does state a cause of action, but the facts are not well pleaded, no objection can be made for the first time in this court. Appellants made no objection to the introduction of testimony upon the ground that the pleadings were insufficient. (*Quirk* v. *Clark*, 7 Mont. 231.)

IV. The instructions given by the court, which appellants say are erroneous, we submit are correct. (Cobbey on Replevin, §§ 1036, 1037; fifth div. Comp. Stats. Mont. § 1541.) In considering the correctness of these instructions, it should be remembered that the mortgage was attacked, not only upon the ground that it was fraudulent, but also upon the ground that it was void, because made without the assent of one of the partners.

HARWOOD, J.—This case was before this court at the January term, 1891, and that appeal was determined by granting a new trial. For a statement of the case, reference may be made to the opinion of the court upon the former appeal, as reported in *Schwab* v. *Owens*, 10 Mont. 381.

Upon the second trial the jury found for respondents, both by general and special verdict, and therein found that the mortgage under which appellants claimed the goods in question was made, and was taken by appellants, with the intention to defraud Owens, whom appellants knew was a silent partner with Levy, the mortgagor and joint owner of the mortgaged goods, and also with the intention to defraud the firm creditors. The jury found further that the mortgagor, Levy, was only indebted to appellants in the sum of $1,960.30, which appears to have been an individual indebtedness of Levy, having no relation to the firm business, whereas all the firm property was mortgaged by Levy to secure a pretended debt of $4,000. A searching trial appears to have been had, in which a large volume of evidence was introduced on behalf of each party to the controversy, and the jury were fully instructed upon every feature of the case.

The particular alleged errors of which appellants' counsel

complain in their brief and arguments before this court relate
to certain portions of the instructions given to the jury.  It is
a familiar rule that, in the consideration of alleged error com-
mitted in giving instructions, the instructions as a whole are to
be reviewed and considered together.  This we have done, and,
considering the instructions altogether, we find no error in
them.  It seems plain from the special findings that the jury
arrived at their verdict from a belief, upon the whole case, that
the mortgage under which appellants claim was made and
received with the intent to defraud Owens and the creditors of
the firm of Levy and Owens.  The jury regarded the trans-
action as fraudulent, and condemned it as such.  This is ap-
parent from the fact that every special finding submitted was
returned against appellants.  Had the jury arrived at their
verdict from any particular phase of the case, such as making
the mortgage without the knowledge of Owens, as mentioned
in instruction No. 6, they would not necessarily have found the
mortgage was made and received with fraudulent intent.  The
mortgage may have been made without the knowledge of
Owens, and yet in good faith.  The court did not say in that
instruction that the making and receiving of the mortgage
under the circumstances mentioned in said instruction involved
or indicated fraudulent intent at all.  In the first and eleventh
special findings the jury found the facts hypothetically men-
tioned in instruction No. 6.  Had the jury stopped at that, it
might be pertinent to go into a discussion as to whether or not
those facts would be sufficient to sustain a verdict for respond-
ents; but those facts might be stricken out, or the view which
appellants take as to that feature of the case might be conceded,
and there remain findings, independent of that view of the
case, sufficient to overthrow all claim of the appellants to the
property.  So, with instructions Nos. 9 and 11, of which
appellants complain, the features of the case under consider-
ation in those instructions are not connected with the issue of
fraudulent intent, and it is not at all likely those instructions
had any influence upon the minds of the jury in considering and
finding upon the question of fraudulent intent in making and
receiving appellants' mortgage.  The points mentioned in those
instructions might be conceded to appellants, and still the ver-

dict of the jury would be fully sustained by other findings upon considerations entirely independent of those mentioned in instructions 9 and 11. It is one of those cases mentioned in the extract from the opinion of Judge Story, quoted in *Rocheleau v. Boyle, ante,* page 451, wherein it is said that the findings of fraudulent intent or *malum in se* will vitiate and destroy the entire transaction.

Finding no error in the record, it is ordered that the order refusing to grant a new trial and the judgment be affirmed.

*Affirmed.*

Blake, C. J., and De Witt, J., concur.