ROCHELEAU, RESPONDENT, *v.* BOYLE, CONSTABLE, ET
AL., APPELLANTS.

[Argued November 12, 1891.   Decided January 25, 1892.]

CHATTEL MORTGAGES—*Power of sale by mortgagor—Evidence.*—A finding that sales of goods by a mortgagor, in the usual course of trade, were not made with the knowledge or consent of the mortgagee, cannot be supported in the face of evidence that the mortgagee occasionally made purchases of the goods covered by the mortgage, and personally conducted another business three or four doors from the place where the mortgagor was selling the mortgaged goods in open market.

SAME—*Same.*—A mortgage of a stock of goods which leaves possession with the mortgagor, with power to sell the goods in the usual course of trade without accounting for the proceeds, whether such power appear upon the face of the instrument or be proved by extrinsic evidence, is inherently and essentially void as to creditors, though filed and accompanied with the proper affidavit and acknowledgment, as under such circumstances the possession of the mortgaged property cannot be said to remain in the mortgagor as security for the debt as permitted by section 1538, fifth division of the Compiled Statutes.

SAME—*Description.*—A mortgage upon merchandise which describes the property as "stock on hand" is void for uncertainty of description.

SAME— *Validity— Void in part.* — Though a mortgage of personal property may be void as to a part of the property for uncertainty of description, or where such part is covered by a provision which violates the statute, it is not thereby void *in toto,* but where the good faith of the parties is admitted, such mortgage may be enforced as to other property, sufficiently described and not affected by or embraced within the unlawful provision. (*Schwab* v. *Owens,* 10 Mont. 381, cited; *Leopold* v. *Silverman,* 7 Mont. 266, reviewed and criticised.)

*Appeal from Third Judicial District, Deer Lodge County.*

Action on official bond of a constable. The cause was tried before DURFEE, J. Plaintiff had judgment below.

*Forbis & Forbis,* and *Geo. B. Winston,* for Appellants.

A chattel mortgage of a stock of goods, used in the way of retail trade, and where the mortgagor is allowed to continue in the possession of the property, and to sell the goods in the usual course of trade, is in law fraudulent and void, as against the creditors of the mortgagor, no matter whether the parties intended any actual fraud or not. And an agreement or understanding between the mortgagor and mortgagee of chattels, though made after the execution of the mortgage, that the mortgagor may sell the mortgaged property, or a part thereof, on his own account, renders the mortgage void as to the creditors of the mortgagor, and such agreement or understanding will be proven by evidence that the mortgagor did so sell with the knowledge of the mortgagee, and without objection on his part. (*Leopold* v. *Silverman,* 7 Mont. 266; *Peiser* v. *Peticolas,* 50 Tex. 638; 32 Am. Rep. 621; *Standard Imp. Co.* v. *Schultz,* 45 Kan. 52; *Lewiston Nat. Bank* v. *Martin,* Idaho, March, 1890, 23 Pac. Rep. 920; *Aiken* v. *Pascall,* 19 Or. 493; *Wineburgh* v. *Schaer,* 2 Wash. 328; Herman on Chattel Mortgages, p. 235; Pierce on Fraudulent Mortgages of Merchandise, §§ 37, 38, 39, 40, 41, 43, 44, 45, 47, 48, 54, 56, 65, 67, 68, 69, 122, 125, 131, and cases there cited; *Hangen* v. *Hachemeister,* 114 N. Y. 566; 11 Am. St. Rep. 691; *Benedict* v. *Renfro,* 75 Ala. 121; 51 Am. Rep. 429. See, also, note to *Frankhouser* v. *Ellett,* 31 Am. Rep. 178; *Wilson* v. *Voight,* 9 Colo. 614.) The fact that other property besides merchandise is included in the mortgage does not alter the result. A mortgage of this kind being void in part is void *in toto.* It is void *ab initio.* (*Divver*

v. *McLaughlin,* 2 Wend. 596; 20 Am. Dec. 655; *Wilson* v. *Voight,* 9 Colo. 614, which case is quoted with approval in *Leopold* v. *Silverman, supra; Russell* v. *Winne,* 37 N. Y. 519; 97 Am. Dec. 755; *Brasher* v. *Christophe,* 10 Colo. 284; Jones on Chattel Mortgages, § 350, and cases there cited; *Sommerville* v. *Horton,* 4 Yerg. 541; 26 Am. Dec. 242; *Horton* v. *Williams,* 21 Minn. 187.) From the authorities above cited it will be seen that in a majority of the States where this question has been decided the doctrine that a mortgage void in part is void *in toto* is upheld, while in three (Missouri, Illinois, and in Arkansas) the contrary doctrine has been held. The decision by Judge Dillon, which is so much relied upon by counsel for plaintiff, is a Missouri case, and was no doubt decided as it was by Judge Dillon in deference to precedent in that State. There can be no doubt that a majority of the decisions on this point hold that a chattel mortgage void in part is void *in toto.* The case of *Schwab* v. *Owens,* 10 Mont. 381, is not decisive of the point in question, as is contended by counsel for respondent, so far as the Supreme Court of this State is concerned. That case does not decide the point in question in this case. The case at bar is more in line with *Leopold* v. *Silverman, supra,* as will be seen by a comparison of the cases mentioned. The mortgagor in the case at bar was a merchant, and a portion of the property mortgaged was "stock on hand," or his stock in trade, as was shown by the evidence. None of the proceeds of the sales of this stock were ever paid over to the mortgagee to be applied on the mortgage debt, although this mortgage had been on this stock for nearly six months at the time of the levy. This alone is sufficient to stamp the mortgage with fraud.

*Cole & Whitehill,* for Respondent.

I. It was decided in the case of *Leopold* v. *Silverman,* 7 Mont. 266, that the mere retention of the possession of goods mortgaged is neither fraudulent *per se* nor a badge of fraud in law, since the statute was passed requiring the filing of an affidavit of all the parties that the mortgage was made in good faith and without any design to hinder or delay the creditors of the mortgagee. In the case at bar, there being no agreement in the mortgage for a sale of the property described as

"stock on hand," the instrument is not fraudulent in law, and it can only be fraudulent in fact by proof of an outside agreement, and in such case intent to defraud must be proven to have existed at the time of its execution. The intent cannot be inferred by the court. (*Horton* v. *Williams*, 21 Minn. 187; *Ewing* v. *Gray*, 12 Ind. 64; *Maple* v. *Burnside*, 22 Ind. 139; *Allen* v. *Wheeler*, 4 Gray, 123; *Banfield* v. *Whipple*, 14 Allen, 13; *Green* v. *Tanner*, 8 Met. 411; *Bagg* v. *Jerome*, 7 Mich. 145; *Kleine* v. *Katzenberger*, 20 Ohio St. 110; 5 Am. Rep. 630; *Ford* v. *Williams*, 24 N. Y. 359; *Miller* v. *Lockwood*, 32 N. Y. 293.) The question of fraudulent intent was submitted to a jury and it was decided there was none. It is therefore needless to review the authorities cited by counsel, and for the further reason also that this court has already decided the exact point of contention in *Schwab* v. *Owens*, 10 Mont. 381.

II. The jury found that the mortgagor did not know that the mortgagee was selling the "stock on hand." Even if there was a substantial conflict in the evidence, the verdict or findings are conclusive, though against the weight of evidence, and will not be reversed on appeal. (*Payne* v. *Jacobs*, 1 Cal. 39.)

III. The words "stock on hand" in the mortgage in question described but a small portion of the property embraced in it. Nearly all the property was specifically described; it could not be, and was not intended to be included in that described as "stock on hand." At the trial no evidence was given or offered to show an express agreement, contemporaneous with the execution of the mortgage, that the mortgagor might sell the "stock on hand," or anything in the usual course of trade except by inference; on the contrary, it was proven beyond all question that no such agreement had ever been considered at all or even tacitly understood between the parties. The facts that the respondent had been at the bakery of the mortgagor, and that there was an account in the bakery books against him, of which he had no knowledge, were at most circumstances to be submitted to the jury as tending to prove a prior agreement made at the time of the execution of the mortgage. (*Roundy* v. *Converse*, 71 Wis. 524; 5 Am. St. Rep. 240; *Peabody* v. *Landon*, 61 Vt. 318; 15 Am. St. Rep. 903.)

IV. The point made by appellants that a mortgage void in

part is void *in toto* is not so far-reaching as is claimed by them. It is only in New York and one or two other States that a mortgage which is void by reason of containing a provision allowing the mortgagor to sell goods covered by it, in the usual course of trade, is void as to every kind of property embraced in it, and also in those cases where the intention to delay, hinder, and defraud the mortgagor's creditors is participated in by both mortgagor and mortgagee at the time of the execution of the mortgage. In every other sort of case in which this point has been decided it is held that a mortgage not actually fraudulent in its inception may be valid in part and void in part. It is valid as to such chattels as have been properly described, and in no sense are included with those as to which the power of sale did apply. (Jones on Chattel Mortgages, § 351; *Barnet* v. *Fergus*, 51 Ill. 352; 99 Am. Dec. 547; *Lund* v. *Fletcher*, 39 Ark. 325; 43 Am. Rep. 270; *Donnell* v. *Byern*, 69 Mo. 468; *Weeden* v. *Hawes*, 10 Conn. 50; *Langdon* v. *Phelps*, 52 How. Pr. 387; *In re Kahley*, 2 Biss. 383; *In re Kirkbride*, 5 Dill. 116; *State* v. *Tasker*, 31 Mo. 445; *Voorhis* v. *Langsdorf*, 31 Mo. 451.)

HARWOOD, J.—It appears from the record that on the twelfth day of August, 1889, Alphonse Benjamin, of Deer Lodge County, mortgagor, executed and delivered to A. Rocheleau, mortgagee, a chattel mortgage of property, described therein as follows: "All the following described property, situate and being in the city of Anaconda, Deer Lodge County, Montana, to wit: One bay horse, branded 44 on the left shoulder; one bay horse, branded P on left hip, and ——— on left shoulder; one express wagon; two sets of double harness; one bread-box; three show-cases; one counter scale; one milk-shake machine; one desk; four chairs; and baking outfit; stock on hand,"— to secure a promissory note executed and delivered by the mortgagor to the mortgagee of the same date, for the sum of $1,000, payable six months after date, which note was set out in the mortgage. Said mortgage provided for the possession of said property to remain with the mortgagor, and the mortgage was duly filed for record in the office of the county clerk and recorder of Deer Lodge County, as provided by law. There-

after, while said mortgage was in force and unsatisfied, appellant, Peter Boyle, as constable, seized and sold the property described in the mortgage under and by virtue of certain writs of attachment and execution duly issued in actions at law brought against the mortgagor by other creditors, and this action was brought against said constable and his sureties upon his official bond, to recover the amount due on said promissory note.

Appellants admit by answer the execution of said promissory note and mortgage to secure the same, and the good faith of the transaction, but seek to justify the taking of said property under said processes on the ground that the mortgage was void as to said attaching creditors, because it was made and intended to cover by the words "stock on hand" certain merchandise, consisting of canned goods, dried fruits, bread, eggs, cigars, tobacco, etc., and that the mortgagor of such merchandise was left in possession thereof. Under an arrangement, understanding, or agreement of the parties to said mortgage, or with the knowledge and consent of the said mortgagee, the mortgagor was allowed to sell said merchandise, and convert the proceeds arising from such sale to his own use; and that no part of such proceeds were applied to the payment of the debt mentioned in said mortgage. All of which facts relied on in defense were fully set forth by answer.

The trial of the action resulted in a verdict by the jury in favor of plaintiff, the mortgagee of said goods, for the principal sum of said promissory note and the interest thereon. The jury also returned special findings to the following effect: (1) That after the execution of the mortgage, the mortgagor remained in possession of the "stock on hand" mentioned in the mortgage, and continued to sell and dispose of the same in the regular course of business; (2) that such sale of the merchandise was not made with the knowledge and consent of the mortgagee, Rocheleau; (3) that the mortgagor did not apply any of the proceeds arising from the sale of the merchandise to the payment of the amount secured by said mortgage; (4) that during the time the mortgagor, Benjamin, was selling said stock on hand the mortgagee, Rocheleau, was not in a position to know, and did not know that such sale was being made; (5)

that the property mentioned in the mortgage as "stock on hand" was merchandise used by the mortgagor for the purpose of carrying on the bakery and grocery business in Anaconda.

Judgment was rendered against defendants for the sum mentioned in said promissory note and interest, and they moved the court for a new trial on the grounds: (1) That the evidence was insufficient to justify the verdict and findings; (2) error of law occurring at the trial, and excepted to by the moving party. Upon the hearing of the motion for a new trial the court made an order overruling the same, from which order and the judgment this appeal was taken.

In relation to the first ground stated, upon which motion for a new trial was made, appellants insist that the second and fourth findings of the jury, to the effect that the sale of the merchandise which the mortgagor had in his place of business was not made with the knowledge and consent of the mortgagee, Rocheleau, and that he was not in a position to know of such sale, are not supported by the evidence. That appellants are correct in this proposition admits of no doubt when considered in reference to the conduct of the parties to the mortgage, according to their own testimony. According to the testimony of the parties to this mortgage, the mortgagor, Benjamin, was at the time of the execution thereof engaged in running a bakery at Anaconda. His principal business was that of baking and vending bread, cakes, pies, and such other supplies as are usually made and kept for sale at a bakery. In the sale-room of the bakery, in addition to such bakery supplies as were made and kept for sale, the mortgagor also had in stock some other goods, consisting of various kinds of canned goods, dried fruits, raisins, citrons, spices, teas, coffees, candies, cigars, and other tobaccos. According to the testimony of the mortgagor, the stock of such goods which he had on hand at the time of the execution of said mortgage was of the value of from $100 to $200, not including the bakery supplies. The mortgagee testified that at that time such stock on hand was of the value of $75 or $100. Hamilton, one of the attaching creditors, stated in his testimony that he thought the goods in the mortgagor's shop were worth $400, but he does not state what time he was speaking of—whether at the time the mort-

gage was given, or when the attachment was made, or other-
wise. Nor does he indicate whether he was speaking of the
stock of merchandise exclusive of the bakery supplies or in-
cluding the same. The mortgagor testified that a consider-
able portion of the canned goods, dried fruits, etc., was kept
for use and used in the manufacture of bakery supplies, and
also for the consumption of himself and three men whom the
mortgagor employed to work about his business. It appears
that the principal business of the mortgagor was that of oper-
ating a bakery, but he also had at his place of business the
goods mentioned other than strictly bakery supplies. Such
was the state of the mortgagor's business and property at the
time the mortgage was given.

It is shown by the evidence without dispute that at the time
the mortgage was executed, and during its existence, the mort-
gagee, Rocheleau, was engaged in running a butcher shop in the
same town, on the same street, and but three or four doors from
the bakery and sale-room of the mortgagor, Benjamin; that
Rocheleau furnished Benjamin money to the extent of $800 to
assist him in setting up and carrying on his bakery business;
that about the time the mortgage was executed he borrowed of
Rocheleau the further sum of $200, and executed said promis-
sory note and mortgage for the whole amount owing, paid out
said $200 to these same creditors who afterwards attached, and
continued to carry on his bakery business as before, manufact-
uring and selling bakery supplies, and from time to time sold
at retail and used the other goods mentioned, and used the pro-
ceeds of his business to carry the same on, keeping up the stock
of goods and supplies as before the mortgage was executed,
until the attachments were levied, about six months after the
mortgage was executed. After said mortgage was executed
Rocheleau continued to carry on the business of running his
butcher shop at the place aforesaid, and occasionally called at
said bakery and bought small quantities of supplies for the use
of his family, and members of his family also obtained supplies
at said bakery.

Now, the mortgage is conditioned that the mortgagor shall
remain in possession of and use the property described therein
until default in payment of the debt sought to be secured

thereby; and from the facts recited above, shown in evidence, about which there is no dispute, it appears clearly, when considered with the conditions of the mortgage, that the parties thereto contemplated that the mortgagor should remain in possession and carry on his business as theretofore. This the mortgagor proceeded to do under the eye of, and without remonstrance or interference by the mortgagee, and thereby with his knowledge and consent. The statement of the parties to the mortgage in their testimony, that there was no consent, agreement, or understanding to do what was done, are mere assertions without force, and no support to a finding, when considered in reference to what they proceeded to do. One sold and the other bought of the goods in question, one continued to sell and the other was fully cognizant of the selling and the carrying on of the business openly as before the mortgage was executed, and without objection or remonstrance from the mortgagee; and this conduct appears to have been by their own volition, because there is no showing that either acted under duress, delusion, or insanity. The finding of the jury that the carrying on of said business by the mortgagor, and the sale of such goods as he did sell, was without the knowledge or consent of the mortgagee, and that he had no means of knowing of such sales, is not only unsupported by evidence, but it is contrary to the evidence.

It appears that the attaching creditors of the mortgagor sold him supplies, whereby their claims accrued after the mortgage was given, and finally attached not only the merchandise which the mortgagor had in stock, but all other property mentioned in the mortgage. The attaching creditors regarded said mortgage as wholly void, relying upon the case of *Leopold* v. *Silverman*, 7 Mont. 266, wherein it was declared that a mortgage upon merchandise left in possession of the mortgagor with a provision expressed in the mortgage, or with an understanding, permission, or agreement of the parties, although not expressed in the mortgage, whereby the mortgagor is allowed to sell the goods in the usual course of trade, and appropriate the proceeds, or any part thereof, to his own use, "is fraudulent and void as to other creditors, regardless of the good faith of the parties." The appellants rely upon that case to affirm the

proposition that the mortgage in question here is wholly void, not only as to the merchandise, but also as to the property of an entirely different character and description included therein, which was not exposed for sale, and as to which it is not contended there was any understanding or agreement that the mortgagor might sell or offer the same for sale, unless subject to the mortgage.

However general and far-reaching may be the conclusions expressed in the case of *Leopold* v. *Silverman*, it cannot be regarded as authority to sustain appellants' position to the extent they contend for, because no point was involved in that case as to property outside of purely a stock of merchandise, which was mortgaged as a whole, and kept on sale; at least no mention is made in the statement of facts as to property of other character or nature or separate from the stock of merchandise, and as to which there was no provision or permission for the mortgagor to sell or offer to sell the same. It is true, the language held in that case is sweeping, and, if taken literally, and adopted without reference to the facts before the learned judge who prepared the opinion, might be, as general *dicta*, applied to the case at bar, as it has undoubtedly been applied by appellants, and by the authority of which they expect their action to be sustained, in treating this mortgage as null and void as to all the property therein mentioned. This seems to have been the view of the respondents also in the case of *Schwab* v. *Owens*, 10 Mont. 381.

In the case of *Leopold* v. *Silverman* it appears that the property mortgaged was a stock of merchandise, upon which the owners thereof executed three several mortgages to three several creditors: (1) The Stockgrowers' National Bank to secure $3,500. The mortgage was dated November 12, 1886, and contained the following provision: "It is provided, however, that the said parties may continue to sell the said stock of merchandise in the usual course of trade, accounting, however, as often as requested, and at least once a month, to the second party for the proceeds of all such sales;" and, as said in the opinion, "the bank at once placed an agent in possession of the mortgaged property." (2) On the 22d of the same month, and while the agent of the bank was in possession, and the goods

were being sold in the usual course of trade, the said Isaac and
Fannie Silverman executed and delivered to A. Block & Co.,
of Cincinnati, Ohio, a second mortgage, to secure a promissory
note for $3,049.92, upon the same property; and the agent of
the bank, one Hedderick, was requested to act also as the agent
of Block & Co. That mortgage contained the following pro-
vision: "Said first parties may sell said goods, wares, and
merchandise in the usual course of trade. This mortgage is
intended to be second to that now held by the Stockgrowers'
National Bank, of Miles City, Montana." (3) On the eleventh
day of December of the same year the mortgagors "executed
and delivered to Leopold Brothers & Co. a third mortgage on
the same property to secure their promisory note for $3,022.50,
which was to fall due on the first day of May, 1887. The
agent, Hedderick, who was already in possession under the first
and second mortgages, was requested to act also as the agent of
Leopold Brothers & Co., and consented to do so, as far as he
could without prejudice to the bank and to A. Block & Co.
On the twenty-first day of December, 1886, the respondents,
A. Block & Co., for $2,700 cash paid, purchased from the
bank the first mortgage, and continued the agent in posses-
sion until the twenty-fourth or twenty-fifth day of December,
when, it seems, A. Block & Co. put one Newman Borchadt in
possession as their agent, and Leopold Brothers & Co. put one
T. J. Thompson in possession as their agent. All the while
Isaac Silverman was in possession also, and acting as salesman,
receiving fifteen dollars a week and his house rent from the pro-
ceeds of the sales."

After stating the above facts, and referring to the pleadings
in that case, the court, in applying its conclusions as to whether
or not the provisions contained in the first and second of said
mortgages should be held to render them void, said: "The case
of *Robinson* v. *Elliott*, decided by the Supreme Court of the
United States in 1874, reported in 22 Wall. 520, must govern
us in the disposition of this case. It was held in that case, in
effect, that any chattel mortgage upon a stock of merchandise in
trade which permits, by its terms, the mortgagor to remain in pos-
session of the goods, and to sell the same in the usual course of
trade, at his discretion, and to appropriate the proceeds, or a

part thereof, to his own use, until the maturity of the debt purporting to be secured by it, or for an indefinite time, is fraudulent and void as to the other creditors, regardless of the good faith of the parties. It is not a question of intent, but one of effect. Such a mortgage has the effect of hindering, delaying, and defrauding creditors, and all persons are presumed to intend the natural consequences of their own acts, so that the good faith or bad faith of the parties, as it actually existed, becomes immaterial. Such mortgages as this have the fraudulent effect, and the fraudulent intent, if one is necessary, will be presumed by the court from the terms of the mortgage itself. . . . .

From the case of *Robinson* v. *Elliott*, referred to above, and from a great many other cases discussed at length in the able monograph of Mr. Pierce on Mortgages of Merchandise, we may deduce the following general principle: A mortgage of a stock of goods in trade, under which the mortgagor is permitted by the mortgagee to sell the goods at his discretion in the usual course of his business, is inherently and essentially fraudulent as to the creditors of the mortgagor; and this is so even though the agreement or understanding between the mortgagee and the mortgagor permitting such sales is not shown upon the face of the mortgage, but is proven by extrinsic evidence."

In the above statement of the effect of the decision in the case of *Robinson* v. *Elliott*, the court was supported by Mr. Pierce in his treatise on Mortgages of Merchandise, section 2, page 3. But it will be observed that the "general principle" declared in *Leopold* v. *Silverman* is somewhat narrower than the effect of the doctrine of *Robinson* v. *Elliott*, as interpreted in the same case. In the general principle laid down it is declared that a mortgage of merchandise "under which the mortgagor is permitted by the mortgagee to sell the goods at his discretion in the usual course of his business is inherently and essentially fraudulent as to the creditors of the mortgagor; and this is so even though the agreement or understanding between the mortgagee and mortgagor, permitting such sales, is not shown upon the face of the mortgage, but is proven by extrinsic evidence." It is declared in this general principle that a mortgage which comes within its description is void without reference to what is done with the proceeds in such a case; whereas, in *Robinson*

v. *Elliott*, the disposition of the proceeds appears to have been an important, and perhaps may be fairly said to be the controlling idea.

Now, by later decisions of the Supreme Court of the United States (*People's Sav. Bank* v. *Bates*, 120 U. S. 556; *Jewell* v. *Knight*, 123 U. S. 426; *Means* v. *Dowd*, 128 U. S. 273; *Etheridge* v. *Sperry*, 139 U. S. 266), the intent and meaning of the court in the opinion in *Robinson* v. *Elliott* has been fully expounded, by which it appears that the interpretation and application of that case in *Leopold* v. *Silverman* and other cases and treatises was erroneous. In the case of *Etheridge* v. *Sperry*, *supra*, the court was considering the validity of two chattel mortgages on a stock of merchandise situate in Knoxville, Marion County, Iowa, where there was an understanding between the mortgagee and mortgagor to the effect that the latter was to remain in possession of the merchandise mortgaged, and "go on selling goods in the ordinary way," and receive the money derived from the sales, and out of the same pay the running expenses of the establishment and support his family, and to replenish the stock; and that the surplus received from such sales was to be applied on the debt mentioned in the mortgage. Creditors attached said stock of goods, relying on the cases of *Bank of Leavenworth* v. *Hunt*, 11 Wall. 391; *Robinson* v. *Elliott*, and *Means* v. *Dowd*, *supra*, as authority for treating said mortgages as void. In the course of the opinion, which appears to have been unanimously concurred in, Mr. Justice Brewer says: "While there are some points of similarity in each of those cases [last above cited] and this, and while there are observations in the opinions filed in them pertinent and correct with reference to the special facts which, if disconnected from those facts and applied here, might seem authoritative, yet there are clear and sufficient reasons why neither the decisions nor the opinions should control this case. . . . . In *Robinson* v. *Elliott*, a case coming from Indiana, the objection to the chattel mortgage appeared on the face of the instrument, in that it permitted the mortgagor not only to retain possession, but to sell and buy as theretofore, with no stipulation for the application of the surplus proceeds to the payment of the mortgage debt, the only stipulation being that the pur-

chased goods should come within the lien of the mortgage. Apparently this retained power of sale by the mortgagor was in no respect for the benefit of the mortgagee, but to enable the mortgagor to continue in business in defiance of his unsecured creditors, protected by the lien of this mortgage. The conduct of the parties after the mortgage was in harmony with this apparent intent, and removed any uncertainty as to the scope and purpose of the instrument. It was not intended by that decision to hold that a chattel mortgage was void because it provided for a retention of possession by the mortgagor, and a sale by him. On the contrary, Mr. Justice Davis, delivering the opinion of the court, carefully used this language: 'We are not prepared to say that a mortgage under the Indiana statute would not be sustained which allows a stock of goods to be retained by the mortgagor, and sold by him at retail, for the express purpose of applying the proceeds to the payment of the mortgage debt. Indeed, it would seem that such an arrangement, if honestly carried out, would be for the mutual advantage of the mortgagee and the unpreferred creditors. But there are features engrafted on this mortgage which are not only to the prejudice of creditors, but which show that other considerations than the security of the mortgagees, or their accommodation even, entered into the contract. Both the possession and right of disposition remain with the mortgagors. They are to deal with the property as their own, sell at retail, and use the money thus obtained to replenish their stock. There is no covenant to account with the mortgagees, nor any recognition that the property is sold for their benefit.' The instrument considered in *Means* v. *Dowd* was regarded by this court more in the nature of an assignment for the benefit of creditors than as a chattel mortgage; and the same elements were discovered in that instrument, and in the subsequent conduct of the parties, as appeared in the case in 22 Wall. In neither of those cases is it affirmed that a chattel mortgage on a stock of goods is necessarily invalidated by the fact that either in the mortgage, or by parol agreement between the parties, the mortgagor is to retain possession, with the right to sell the goods at retail. On the contrary, it is clearly recognized in them that such an instrument is valid, notwithstanding these stipulations, if it

appears that the sales were to be for the benefit of the mortgagee. What was meant was, that such an instrument should not be used to enable the mortgagor to continue in business as theretofore, with full control of the property and business, and appropriating to himself the benefits thereof, and all the while holding the instrument as a shield against the attacks of unsecured creditors. Neither was it suggested in either of those cases that this court, in determining the validity of a chattel mortgage, would ignore the settled law of the State in which the transaction took place as established by the decisions of its highest court. On the contrary, there was an intimation that this court would respect such decisions."

Then follows an examination of the law concerning mortgages of merchandise in Iowa, according to the statute and decisions of the Supreme Court of that State, whereby it is found that such a mortgage as the one under consideration would be held valid there; and the Supreme Court of the United States, applying the same construction, holds the mortgages under consideration valid. But the opinion does not stop there; it goes into the discussion of general principles relating to mortgages of merchandise, in which the following observations are made: "We are aware that there is great diversity in the rulings on this question by the courts of the several States; but, whatever may be our individual views as to what the law ought to be in respect thereto, there is so much of a local nature entering into chattel mortgages that this court will accept the settled law of each State as decisive in respect to any case arising therein. (*Union Bank* v. *Kansas City Bank*, 136 U. S. 223.) Indeed, if this were an open question, we could not be blind to the fact that the tendency of this commercial age is towards increased facilities in the transfer of property, and to uphold such transfers so far as they are made in good faith; and it is at least worthy of thought whether the rulings made by the Supreme Court of Iowa do not tend to make chattel mortgages more valuable for commercial purposes, without endangering the rights of unsecured creditors. The law now generally requires a record of all such instruments; and that, like the recording of a real estate mortgage, gives notice to all parties interested of the fact and extent of encumbrances.

Why should a transaction like this be condemned, if made in good faith, and to secure an honest debt? The owner of a stock of goods may make an absolute sale of them to his creditor in payment of a debt. If an absolute, why not a conditional sale, with such conditions as he and his creditor may agree upon? As between the parties, no court would question this right, or refuse to enforce the conditions. The interests of the general public are not prejudiced by any such transaction between debtor and creditor. Indeed, they are rather promoted by any arrangement under which the mortgagor can continue in business, for in ninety-nine cases out of a hundred the taking of possession by a creditor results in closing the business, and turning the debtor out of employment. The only parties who can claim to be injuriously affected are unsecured creditors. But they are notified by the record of the exact relations between the mortgagor and mortgagee; and surely subsequent creditors have no right to complain if they deal with the mortgagor with full knowledge of such relations. Existing creditors may, of course, challenge the good faith of the transaction; but if they cannot disturb an absolute sale when made in good faith, why should they be permitted to challenge a conditional sale if made in like good faith? The fact that fraudulent relations are possible is hardly a sufficient reason for denouncing transactions which are not fraudulent. So, if the question were open, or a new one, unaffected by any settled law of the State, we incline to the opinion that the question is not one of law so much as it is one of fact and good faith, and that the decision of the Supreme Court of Iowa rests on sound principles."

As far as we are aware, the above is the latest expression of the Supreme Court of the United States on this interesting question, which has engaged so much attention of courts and law-writers in recent years. From these expressions it is seen that the case of *Leopold* v. *Silverman* would have been determined otherwise than it was had it been before the Supreme Court of the United States. Not only was the doctrine of *Robinson* v. *Elliott* misunderstood, but in the *Silverman Case* it was applied to a state of facts in no way resembling the facts in question in *Robinson* v. *Elliott*, and in this appears to be the greatest infirmity of the holding in the *Silverman Case*. In the

latter case, looking at the instruments in question, and facts as recited in the opinion, one is led to inquire in what features did these transactions differ from assignments with immediate delivery of possession of the property to secure and pay the obligations mentioned by conversion into money as far as the property would suffice for that purpose, with preferences according to the order of the execution of said instruments? The instruments were called "mortgages," but the labels put upon instruments do not determine their nature. (*Marshall* v. *Livingston Nat. Bank, ante,* p. 351.) It appears that the parties entered at once upon the disposition of said goods, with the mortgagees in possession by agent to receive the proceeds. That the mortgagor, Silverman, was allowed to remain in the store and "act as salesman, receiving fifteen dollars a week and his house rent from the proceeds of the sales," seems to be the ground upon which the first two instruments were declared void. It appears to have been an arrangement to allow the debtor to aid in the selling of the goods, allowing him a certain fixed stipend for his services; and, had he been entirely excluded, without doubt as much would have been necessarily expended for the services of other salesmen. And there is no intimation that anything in the nature of actual fraud was done or contemplated through that arrangement; nor that the arrangement was inexpedient or injurious to any party in interest. The same employment is allowed in case of assignments by debtors for the benefit of creditors, where it is done in good faith, and for the beneficial interest of all parties concerned. (See Burrill on Assignments, § 571, and cases cited; *O' Gara* v. *Lowry,* 5 Mont. 427.)

For the reasons set forth it is perceived that parties dealing with questions touching mortgages or assignments of chattels, especially such as have merchandise included therein, should not rely upon extending the doctrine of the *Silverman Case,* nor, perhaps, rely too strongly upon having that case applied to a like state of facts, where, as in that case, everything is admitted to have been done in good faith to secure the debts mentioned and honestly owing ; because, while there are many strong cases declaring mortgages of merchandise void under a given state of facts, still we have not found any declaring that instrument void under facts similar to that case, nor where the

mortgagor is so far divested of possession and control, and notice not only given by record, but the installation of the mortgagee in possession, either in person or by agent, and where admittedly all conduct respecting the transaction was *bona fide.*

In the case at bar there are two questions to be determined : (1) Was the mortgage void as to the merchandise which was mentioned, or wholly void, by reason of the possession of such merchandise being left in the possession of the mortgagor with permission to sell the same in the usual course of trade, and use the proceeds of such sale, without reference to the mortgage? (2) If said mortgage should be held void as to its attempt to cover merchandise under the conditions stated, should it by reason of that fact also be held void *in toto ;* i. e., as to other property mortgaged, and as to which there was no permission to sell or dispose of the same, and where the good faith of the transaction is admitted?

As to the first proposition, our statute provides : "No mortgage of goods, chattels, or personal property shall be valid, as against the rights and interests of any other person than the parties thereto, unless the possession of such goods, chattels, or personal property be delivered to and retained by the mortgagee, or the mortgage provide that the property may remain in the possession of the mortgagor, and be accompanied by an affidavit of all the parties thereto ; or, in case any party is absent, an affidavit of those present, and of the agent or attorney of such absent party, that the same is made in good faith to secure the amount named therein, and without any design to hinder or delay the creditors of the mortgagor, and be acknowledged and filed as hereinafter provided." (§ 1538, div. 5, Comp. Stats.) By this statute it is seen that the possession of the mortgaged property is to be fixed somewhere, and remain subject to the lien, until that lien is released in some proper manner, consistent with the law and nature of the mortgage, or the property is applied to extinguish the debt secured. The possession may be "delivered to and retained by the mortgagee," or the possession may remain with the mortgagor, and the mortgage be accompanied by the required affidavit of " good faith to secure the amount named " in the mortgage, and filed in the office of the recorder of deeds, to give notice of the exist-

ing lien on the property. Now, if a mortgage of goods be
made, as provided by statute, leaving possession with the mort-
gagor, and it be understood, agreed, or knowingly permitted
(for, if it is knowingly permitted, it is understood and agreed)
to the mortgagor to place the mortgaged goods on sale, not
subject to the mortgage, to be sold, carried away, or consumed,
and to use the proceeds without reference to the mortgage,
this arrangement annuls every vital element of the mortgage so
far as concerns the goods to which such arrangement or per-
mission extends. The mortgage, under such circumstances,
becomes a mere sham, a mere appearance, a delusion, asserting
in form what is not in fact, as admitted by the conduct of the
parties. The possession does not remain. Nor does the prop-
erty remain. It is shifted over to those who will come and buy,
and is carried away without respect to the mortgage, and the
proceeds devoted to purposes other than answering for the debt
mentioned in the mortgage. The parties to such an arrange-
ment have departed from the observance of a statutory re-
quirement as to the property to which such arrangement or
permission applies, and we think there ought to be no hesita-
tion in holding the mortgage void as to property so dealt with;
or, in other words, that such property is put out from under
such mortgage by the conduct of the parties in relation to it.

Numerous decisions may be found to support this conclusion.
The conclusion is often announced as founded on the idea of
"constructive fraud," or "fraud in law"; and the treating of
the question on that theory has given rise to much controversy,
for those opposing always point to the fact, usually admitted in
the discussion, that there is no element of fraud in fact in the
conduct of the parties; and where a statute exists (like § 231,
div. 5, Comp. Stats.) providing that questions of fraudulent
intent in making conveyances of property shall be deemed
questions of fact for a jury, and not questions of law, such
statute is pointed to also as forbidding the court from deducing,
presuming, or inferring fraud in the transaction, where the jury
has not so found. In *Brett* v. *Carter*, 2 Low. 458, Lowell, J.,
of the United States District Court for Massachusetts, has
given a most trenchant exposition of reasons opposed to the
theory of "constructive fraud" or "fraud in law," as appli-

cable to cases like the one at bar.    There is much able reasoning
on both sides of the controversy.    But after much consideration
we do not regard the case as involving the question of fraudulent
intent, to be found by applying the principle of "constructive
fraud" or "fraud in law," so much as the question whether or
not the parties, by the conditions which they entered into, or
sanctioned by their conduct, made or failed to make a valid mort-
gage as to the whole or part of the property intended to be
covered by the mortgage lien; or, having made a good mort-
gage, so far as shown by the terms of the instrument, by mutual
agreement, understanding, or permission, the parties annulled
some essential condition of the mortgage as to all or part of
the property mentioned.    The subject of the mortgage being
personal property, such conditions may be entered into, under-
stood, or permitted, which render nugatory some essential con-
dition of the intended mortgage as to the whole or part of the
property; or such condition may be expressed in the instrument.
And, although such conditions were entered into or permitted
in good faith, nevertheless, when all the conditions are shown,
the question arises whether or not the parties fulfilled the law
as to making a mortgage; and this is a question of law.    It
may be found without reference to the question of fraud that the
parties fell short of making a mortgage, or, that having made
one, they nullified it as to the whole or part of the property by
other agreement, understanding, or permission touching the
same; and this conclusion may be reached on considering the
facts without reference to the motive which prompted the acts.

There can be no question that the statute mentioned must
control, where a conveyance of property is made, and the good
faith of the transaction is drawn in question, i. e., the question
as to whether or not the conveyance was conceived and made
with an intent to hinder, delay, or defraud creditors, or others
mentioned in the statute.    But that is not the question in the
case at bar.    The good faith of the parties in the transaction
was admitted, and the question was, did the transaction, con-
sidering the conditions agreed upon between mortgagor and
mortgagee concerning the property, or concerning certain por-
tions of it, amount to a mortgage of chattels under the pro-
visions of the statute?    The facts are admitted.    The mortgagor

remained in possession of the property, and, as to the merchandise, he was permitted, with the knowledge and tacit consent of the mortgagee, to go on dealing with, using, and disposing of his merchandise, and using the proceeds, without reference to the mortgage.   When the facts which enter into a transaction are admitted or found, it is a question of law for the court to determine whether the transaction amounted to a mortgage, as provided by statute, or whether it lacked a vital element, touching the whole or part of the transaction.   Although parties intended in good faith to make a chattel mortgage, when all the facts are found as to what they did in the transaction, it is a question of law as to whether or not that which was done fulfilled the requirements of statute in the making of a mortgage. We hold that as to the merchandise one of the vital conditions of the mortgage was removed by consent of the parties, and as to that property the mortgage was without force or effect.

There is another ground upon which this mortgage should be held void in so far as it attempted to cover merchandise. That infirmity is the want of such description as to indicate with reasonable certainty what goods, wares, and merchandise were intended, and in what place situate.   The words of the mortgage attempting to describe this class of property are, "stock on hand."   This may be a convenient phrase to cover a stock of merchandise in some transactions; but it is not such a description as would show to third persons, with reasonable certainty, what particular goods the mortgage applied to.   It may well be asked, and asked in vain, what stock of goods was intended?   Was it the stock on hand when the mortgage was made, or the stock which might be on hand when the debt to be secured became due?   The phrase used is so convertible, capable of such dilation and contraction, and such diversity of construction and application, it is doubtful whether the parties to the mortgage both intended one and the same thing by it. But as to third parties the description must be more certain than is required between the parties to the instrument, and from that point of view the description as to the merchandise is insufficient.   (*Barrett* v. *Fisch*, 76 Iowa, 553; 14 Am. St. Rep. 238, and cases cited; *Stewart* v. *Jaques*, 77 Ga. 365; 4 Am.

St. Rep. 86; *Golden* v. *Cockril,* 1 Kan. 259; 81 Am. Dec. 510, and cases cited in notes.)

Upon the second proposition, in view of the fact that the good faith of the parties to the mortgage is admitted, we can find no just ground for holding the mortgage void as to property mentioned therein, other than merchandise. It is not contended that there was any arrangement, understanding, or permission allowing the mortgagor to deal with such other property as he did with the merchandise and the proceeds derived therefrom. Where fraudulent intent was not the motive which led to the transaction, a defect by which it loses part of its intended effect is not held to vitiate the whole transaction. In the case of *United States* v. *Bradley,* 10 Peters, 360, Mr. Justice Story, expressing the opinion of the court concerning this feature of an instrument, says: "That bonds and other deeds may, in many cases, be good in part, and void for the residue, where the residue is founded in illegality, but not *malum in se,* is a doctrine well founded in the common law, and has been recognized from a very early period. Thus, in *Pigot's Case,* 11 Coke, 27 *b,* it was said that it was unanimously agreed in 14 Hen. VIII., 25, 26, that if some of the covenants of an indenture or of the conditions indorsed upon a bond are against law, and some are good and lawful, in this case the covenants or conditions which are against law are void *ab initio,* and the others stand good. And notwithstanding the decision in *Lee* v. *Coleshill,* Cro. Eliz. 529, which, however, is distinguishable, being founded on a statute, the doctrine has been maintained, and is settled law at the present day in all cases where the different covenants or conditions are severable, and independent of each other, and do not import *malum in se,* as will abundantly appear from the case of *Newman* v. *Newman,* 4 Maule & S. 66, and the other cases hereafter stated; and many more might be added." The following cases are directly in point, and apply the doctrine to which Mr. Justice Story refers to cases like the one at bar: *Hayes* v. *Westcott,* 91 Ala. 143; 24 Am. St. Rep. 875; Jones on Chattel Mortgages, § 351; *Barnet* v. *Fergus,* 51 Ill. 352; 99 Am. Dec. 547; *Lund* v. *Fletcher,* 39 Ark. 325; 43 Am. Rep. 270; *Donnell* v. *Byern,* 69 Mo. 468; *In re Kahley,* 2 Biss. 383; *In re Kirkbride,* 5

Dill. 116; *State* v. *Tasker*, 31 Mo. 445; *Voorhis* v. *Langsdorf,* 31 Mo. 451.

It is our opinion that a new trial should be granted, and therein the proceeding should conform to the views herein expressed; and it is so ordered.

*Reversed.*

BLAKE, C. J., and DE WITT, J., concur..

